UNITED STATES, Appellant

v.

MARION LUCAS, Stewardsman, U. S. Naval Reserve, Appellee

1 USCMA 19, 1 CMR 19

No. 7

Decided November 8, 1951

 █

MAJ. Maurice C. Goodpasture, USMC, for Appellant.
LCDR. Robert H. McCarthy, USN, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

This cause comes to this court by certificate of the Judge Advocate General of the Navy pursuant to Article 67(b)(2) of the Uniform Code of Military Justice (Act of May 5, 1950, 64 Stat 108; 50 U.S.C. §§ 551–736). The particular point certified is whether or not the board of review erred in setting aside the conviction of the accused because a special court-martial failed to proceed in the manner required by Articles 51(a), 51(c), and 52 of the Uniform Code of Military Justice, and paragraph 73, Manual for Courts-Martial, 1951. The government seeks to have the decision of the board of review reversed and the accused contends the decision should be affirmed. In this decision we will refer to the Uniform Code of Military Justice as the "Code" and the Manual for Courts-Martial, 1951, as the "Manual."

The trial of the accused came on for hearing before the court-martial on June 5, 1951. The offense with which he was charged occurred prior to the effective date of the Code but the trial was conducted under the new act. However, certain provisions of the Code were either overlooked or disregarded.

The specification charged that while serving on duty on board the U.S.S. LATIMER the accused was granted a leave of absence from station and duty; that he failed to return after the expiration of his leave and remained absent without proper authority for a period of 29 days; and that as a result of his absence he missed the ship when it sailed.

The government and the accused were represented by counsel who were not lawyers, which is permissible in cases tried by special courts-martial. After preliminary proceedings, the accused entered a plea of guilty to the charges and specifications. The president of the court warned him of the effect of the plea in the following words:

". . . you have pleaded guilty to the specification and charge. By so doing, you have admitted every act or omission charged and every element of that offense. Your plea subjects you to a finding of guilty without further proof of that offense, in which event you may be sentenced by the court to the maximum punishment authorized for it. You are legally entitled to plead not guilty and place the burden upon the prosecution of proving your guilt of that offense. Your plea will not be accepted unless you understand its meaning and effect. Do you understand?"

Subsequent to this explanation the accused stated that he understood the effect of his plea and that he desired to have the plea stand. The president of the court then announced that the specification was proven by the plea. Thereafter, the court received personal data and evidence of a previous conviction of the accused. The president then closed the court for the purpose of voting on the sentence. By secret ballot a legal sentence was voted and the accused was subsequently sentenced. The convening authority approved the findings and sentence but suspended the bad conduct discharge for a period

of six months. The board of review reversed the decision of the court basing its decision upon the provision of the Code hereinbefore mentioned.

In order to dispose of the certified question, it becomes necessary to construe subsections (a) and (c) of Article 51 and subsection (a)(2) of Article 52 of the Code, and their relationship to paragraph 73(b) of the Manual.

Subsection (a) of Article 51 of the Code provides as follows:

"Voting by members of a general or special court-martial upon questions of challenge, *on the findings, and on the sentence shall be by secret written ballot.* The junior members of the court shall in each case count the votes, which count shall be checked by the president who shall forthwith announce the result of the ballot to the members of the court." (*Italics ours*)

Subsection (c) of the same article reads:

"Before a vote is taken on the findings, the law officer of a general court-martial and the president of a special court-martial shall, in the presence of the accused and counsel, instruct the court as to the elements of the offense and charge the court—

"(1) that the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond reasonable doubt;

"(2) that in the case being considered, if there is a reasonable doubt as to the guilt of the accused, the doubt shall be resolved in favor of the accused and he shall be acquitted;

"(3) that if there is a reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no reasonable doubt; and

"(4) that the burden of proof to establish the guilt of the accused beyond reasonable doubt is upon the Government."

In compiling the Manual, the wording of Article 51(c) was changed and the law officer was required to charge the court in all cases. Paragraph 73(b) of the Manual provides that after instructing the court as to the elements of each offense charged the law officer (president in special courts-martial) shall in all cases, *including those in which a plea of guilty has been entered,* charge the court on the four elements set forth in Article 51(c) of the Code, supra. It will thus be observed that, while the Code does not require that the charge be given in those cases where a plea of guilty has been entered, the Manual does.

For the purposes of this case we can and do hold that the act of Congress (the Code) and the act of the Executive (the Manual) are on the same level and that the ordinary rules of statutory construction apply. In that event the general rule is that statutes dealing with the same subject should, if possible, be so construed that effect is given to every provision of each. Moreover, in dealing with each, its provisions should be construed so that no part will be inoperative, superfluous, void or ineffective.

The provisions of paragraph 73 of the Manual are clear and unambiguous and we can construe that section's provisions to be applicable without doing violation to the language of the Code. The addition of the words "including those in which a plea of guilty has been entered" may place an additional burden upon the law officer and the president of courts-martial not expressly imposed by the Code, but the requirement encompassed within the phrase is not prohibited by the Code. There is nothing in it which states that the law officer or president of a court-martial need not instruct the members of the court. Silence on the part of Congress does not necessarily require like silence on the part of the Executive when, as here, the President has been expressly authorized to prescribe rules of procedure for courts-martial (Uniform Code of Military Justice, Article 36). While we may be unable to ascertain any virtue in the additional requirement, we cannot ignore the plain meaning of the language used.

22

To be consistent with the foregoing principles, we hold that the provisions of Section 73 of the Manu- ■■■■■■■ al are mandatory and should be complied with by the law officer and the president of courts-martial and that failure to follow out the mandate as required by that section when a plea of guilty is entered is error as a matter of law.

Our disposition of the first question requires that we consider the error in the light of Section 59(a) of the Code, which provides as follows:

"A finding or sentence of a court-martial shall not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."

"Substantial rights" means not seeming or imaginary, not illusive, but real, solid and firm rights. Rule ■■■■■■■ 87(c) of the Manual states the test to be applied by a convening authority in determining whether error is substantial as follows:

". . . . The test to be applied in determining whether an error materially prejudiced the substantial rights of the accused is this: An error prejudicial to the rights of the accused must be held to require the disapproval of a finding of guilty of an offense, or the part thereof, to which it relates unless the competent evidence of record is of such quantity and quality that a court of reasonable and conscientious men would have made the same finding had the error not been committed.

"Regardless, however, of the test in the subparagraph above, if the error is such a flagrant violation of a fundamental right of the accused as to amount to a denial of due process (e.g., when the disloyalty of defense counsel directly aids the prosecution) the finding must be disapproved regardless of the compelling nature of the competent evidence of record."

Mr. Justice Rutledge speaking for the United States Supreme Court in the case of Kotteakos v. United States (1946), 328 US 750, 764–765, 90 L ed 1557, 66 S Ct 1239, states the rule in slightly different language which we believe more aptly points up the test. He stated:

". . . [The test must be] what effect the error had or reasonably might be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.

. . . . .

"If when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress [citing Bruno v. United States, 308 US 287, 294, 84 L ed 257, 60 S. Ct 198]. . . . The inquiry cannot be merely whether there was enough to support the result apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

In practically all federal and state courts when a defendant pleads guilty to an information or indict- ■■■■■■ ment he has by such plea admitted all incriminating facts alleged and the statutory elements of the offense. See Bugg v. Hudspeth, 113 F2d 260 (CA—Cir.); Langston v. United States, 153 F2d 840 (CA—Cir.); and Hobson v. Youell, 15 SE2d 76, 177 Va 906. A plea of guilty is a confession of guilt and equivalent to conviction. It removes from the trier of the fact any question of innocence or guilt. If the plea is regularly made there remains only the requirement by the court of imposing an appropriate sentence.

In previous military cases the same rule has been adopted. In ACM 590, Larmon, 1 CMR 650; ACM 3005, Crane, 3 CMR 634; and CM 315165, Palmer, 64 BR 365, boards of review have held that a plea of guilty was an admission of the incriminating facts alleged. They were decided before the Manual was adopted and so the question of the

necessity of instructing the members of the court was not involved.

We are not constrained to hold that this is a case involving failure to accord the accused one of his constitutional rights. Neither does it suggest an intent on the part of the prosecution deliberately to prejudice the accused. At the most, the record indicates that both parties were unfamiliar with the requirement when a plea of guilty was entered as the point was not raised before the court-martial.

In disposing of the point we accept the tests laid down in the Kotteakos case, supra, as the test for determining whether or not the error in the case at bar was prejudicial. Tested by this rule we are unable to ascertain how the accused was prejudiced. At the time the plea was entered he was informed that the plea of guilty was an admission of the act as charged and every element of the offense alleged. He was told that he had the right to plead not guilty and by so doing would place the burden of proof of guilt upon the government. He was further informed that his plea subjected him to a finding of guilty without further proof of the offense, and that the plea would not be accepted unless he understood its effect and meaning. In spite of this full and fair explanation, the accused persisted in his plea. If, as held in the previously cited authorities, a plea of guilty admits all of the incriminating facts alleged and the statutory elements of the offense charged, it is difficult to see any merit in the contention that the failure to instruct had any effect upon the court's decision. An accused is not presumed innocent after he has pleaded guilty. There could be no reasonable doubt remaining as to his guilt. There are no degrees of the crime alleged and the burden of proof has been established by plea.

It is argued that had the required instruction been given the accused might have possibly changed his plea or the court might have possibly found the accused not guilty. In answering the first contention, the accused was fully apprised of the fact that every element of the offense was proven by his plea of guilty and that a plea of not guilty would place upon the government the burden of establishing his guilt. He thus knew that innocence could not be presumed; that all doubt of guilt had been removed; that the burden of proof on the government no longer existed; and that there were no facts upon which the court could find him not guilty.

The answer to the second contention is that we presume the members of the court would act as reasonable men in considering the case; that had the instructions been given they would perform their duties of returning a verdict consistent with the plea of guilty; and that they could not, without violating their oaths as members of the court, return a not guilty verdict when every element of the offense and every incriminating fact was confessed by the accused in open court after a full and fair explanation.

Without delving into speculation and conjecture we can find no rational ground upon which the defendant could have been found not guilty; particularly when no contention has been advanced that the accused did not fully understand the effect of his plea. Under such circumstances the evidence supplied by a plea of guilty is of such quantity and quality that a court of reasonably conscientious men would have made the same finding had the error not been committed and the impact from the error could not affect the minds of the members of the court.

A similar problem is posed by the failure of the court to comply with Subsection (a)(2) of Article 52 of the Code. The article provides as follows:

"(a)(1) No person shall be convicted of an offense for which the death penalty is made mandatory by law, except by the concurrence of all the members of the court-martial present at the time the vote is taken.

"(a)(2) No person shall be convicted of any other offense, except by the concurrence of two-thirds of the

24

members present at the time the vote is taken.

"(b)(1) No person shall be sentenced to suffer death, except by the concurrence of all the members of the court-martial present at the time the vote is taken and for an offense in this code made expressly punishable by death.

"(b)(2) No person shall be sentenced to life imprisonment or to confinement in excess of ten years, except by the concurrence of three-fourths of the members present at the time the vote is taken."

The provisions of Article 52 and the manner of its arrangement clearly indicate that when Congress ▮▮▮▮▮ was speaking of the conviction for an offense it intended to limit the meaning of "convicted" to a finding of guilty of the charge. This is apparent from section (b) of the article, which provides for a separate vote on the sentence to be imposed. For certain crimes and sentences the article prescribes a different percentage of concurrence for the conviction and the sentence.

If we limit the word "convicted" to mean a finding of guilty of the offense we narrow the question to one of whether the plea of guilty required the president to close the court and take a secret ballot on this issue. We are permitted to do this because the record affirmatively discloses that the court was closed and a secret ballot conducted on the sentence.

When Congress requires a particular procedure there can be no question but that the court should follow it to the letter. We are thus constrained again to hold that an error of law was committed by the court. Conceding the error, we are unable to escape the express mandate from Congress that we should not reverse except for an error materially prejudicing the substantial rights of the accused.

Cast in the background of a plea of guilty, we are convinced that the failure to vote did not prejudicially affect the accused. The president announced in open court that the specification was proven by plea. The other members of the court apparently concurred in this holding as they expressed no desire to go into closed session. In addition, the accused and his counsel must have considered the proceedings satisfactory to them as they registered no objection. Moreover, immediately thereafter the court went into a closed session and the members secretly voted on the sentence. It seems reasonable for this court to assume that had the members of the court not concurred in the finding of guilty they would not have voted affirmatively upon the sentence.

Some arguments have been advanced in the briefs that in spite of the plea of guilty because of the secrecy of the ballot the court might have voted to find the accused not guilty. It may be that some juries, contrary to their obligation, in exceptional cases, disregard both the law and the facts to render a verdict in favor of the defendant. Assuming that that sometimes happens, we cannot presume such a result might have been possible in this case. Courts-martial are presumed to return a true and just finding according to the evidence. The evidence of guilt was conclusive. The charge was not complicated so that a guilty plea might have been inadvertently entered. There were not several specifications charged in different language. There would be no occasion to barter one charge against the other or to arrive at a compromise verdict. There remained only a vote on the single issue of whether the accused was guilty of being absent without leave. He had pleaded he was so it is inconceivable that the court would have found otherwise. Accused does not contend that the record bears any evidence of any fact which would cause a member of the court to hesitate to render a verdict against him. As a matter of fact, we do not find in the record that accused ever complained about the procedure until the cause was appealed to this court. The question reached us because the board of review concluded that the provisions we have quoted herein were mandatory and it was required to reverse without regard to prejudice.

There are, however, trial proceedings which can be waived by an accused and if he pleads guilty to an offense after being fully and fairly informed of the consequences of the plea we can see no prejudice because formalities were not strictly followed.

By reversing the board of review we do not wish to be understood as holding that courts-martial should not strictly comply with the provisions of the new Code and the Manual for Courts-Martial, United States, 1951. While the act and Manual have been in force for only a short time members selected for the court should fully apprise themselves of their requirements and willingly follow their mandates. The fewer the errors of law the fewer the complaints about injustices.

The decision of the board of review is reversed.

Chief Judge QUINN and Judge BROSMAN concur.