UNITED STATES, Appellee

v.

FRANK ABBOT STEWART, Major, U. S. Army, Appellant

1 USCMA 648, 5 CMR 76

No. 508

Decided August 29, 1952

LT. COL. George E. Mickel, USA, for Appellant.

LT. COL. Thayer Chapman, USA, and 1ST LT. Richard L. Brown, USA, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The operative facts of this case begin where those of its companion case, United States v. Jewson (No. 532), 1 USCMA 652, 5 CMR 80, decided this date, end. Petitioner here was the executive officer of the 235th Field Artillery Battalion, stationed at Camp McCoy, Wisconsin. He was sum-

moned to assume command of the battalion when his commanding officer, Lieutenant Colonel Herbert F. Jewson, Jr., had been placed in arrest for his part in the showing of a lewd and obscene motion picture.

Appellant has been found guilty under one specification alleging conduct unbecoming an officer and a gentleman, in violation of Article of War 95, 10 USC § 1567; and one specification alleging conduct prejudicial to good order and military discipline, in violation of Article of War 96, 10 USC § 1568. The gist of each specification is that the accused had wrongfully and knowingly instructed one Private Levy to deny knowledge of the lewd and obscene films he had procured, if called in connection with an investigation then pending. Other specifications of which appellant was found not guilty are of no moment here. On the basis of those specifications of which he was found guilty, the accused was sentenced to dismissal.

The Court granted petition for review, limited, however, to two issues: (1) Whether the court-martial prejudicially erred in receiving Prosecution Exhibit 7 in evidence, and in receiving testimony in connection therewith and in connection with Prosecution Exhibit 3. (2) Whether the evidence is sufficient as a matter of law to support the findings of guilty.

## II

Prosecution Exhibits 3 and 7 were two of the lewd and obscene motion picture films involved. Appellant argues that Exhibit 7 together with oral testimony as to the character of Exhibit 7 and Exhibit 3—which latter was not introduced in evidence—should have been excluded, because the character of the films was undisputed, and their admission could only operate improperly to influence the members of the court against him. The Government argues, however, that admission of the film and testimony was necessary because the charge sheet alleged specifically the lewd and obscene character of the films involved, and proof thereof was required by the general denial implicit in appellant's plea of not guilty.

Generally speaking, the admission or exclusion of evidence is a matter for determination by the law member or law officer. It rests to a considerable extent within his discretion, and he is not subject to reversal in the absence of a clear showing of prejudicial error. We agree with appellant's position that the scandalous nature of the motion picture films was not in issue. As noted, however, the Government's position in this respect is that the plea of not guilty put in issue every allegation of the specifications. Consequently—it continues—since it was alleged that appellant instructed Private Levy to deny knowledge of the lewd and obscene films, it became incumbent on the prosecution to establish that they were in fact lewd and obscene. This theory smacks of an outmoded concept of pleading. Logically, if the Government's position is sound, it would follow that the allegations and plea here would likewise require proof that Private Levy was in fact Private Levy.

In our view the issue required only proof bearing on whether appellant instructed Private Levy as he was charged with having done. Manifestly, whether the films were obscene is irrelevant to that issue. It follows that it was error to admit in evidence the film and the testimony as to its and its fellow's nature.

It remains, however, to decide whether this error presented a fair risk of substantial prejudice to appellant. Without such prejudice, there is, of course, no warrant for reversal. United States v. Lucas (No. 7), 1 USCMA 19, 1 CMR 19, decided November 8, 1951; Manual for Courts-Martial, U. S. Army, 1949, paragraph 100b; Manual for Courts-Martial, United States, 1951, paragraph 100a; Uniform Code of Military Justice, Article 59(a), 50 USC § 646.

The Supreme Court has aptly stated the test to be:

". . . what effect the error had or reasonably might be taken to have had upon the jury's decision. The crucial thing is the impact of the

thing done wrong on the minds of other men, not on one's own, in the total setting.

. . . . . . . .

"If when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress . . . . The inquiry cannot be merely whether there was enough to support the result apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." Kotteakos v. United States, 328 US 750, 764–765, 90 L ed 1557, 1566, 66 S Ct 1239 (quoted in United States v. Lucas, supra).

Appellant's brief on the question of prejudice is unhelpful. He contends simply that the diversion of the court-martial's attention to the immaterial and allegedly inflammatory issue of the lewd nature of the films was "bound to result in prejudice to the accused's substantial rights." However, error is not presumed to affect injuriously the substantial rights of an accused. A fair risk of prejudice must be demonstrated. We have, nevertheless, searched the record for prejudice, and have been able to discern none. The films themselves were, in fact, never viewed by the members of the court. The effect, if any, of the testimony as to their nature could only have been "very slight." Kotteakos v. United States, supra. Appellant was acquitted under two specifications identical in content to those here, except as to the identity of the persons allegedly urged to deny knowledge of the nature of the films. The net is that there simply is no indication of prejudice.

### III

Appellant's final assignment of error questions the sufficiency of the evidence to support the findings of guilt. Laying aside the evidence in the record bearing most particularly on the specifications of which accused was found not guilty, that dealing with the specifications being reviewed here is not at all complex. Appellant flatly controverted the allegation that he had told Private Levy to deny knowledge of the films. A Lieutenant Hoffman, a battalion officer who was present when the charged conversation transpired, testified to the same effect. Private Levy, on the other hand, was equally certain that he had been told explicitly to say nothing to anyone about the film.

From the argument in appellant's brief, we understand his position to be that he did admonish Levy not to discuss the matter, but that he did not instruct him to deny all knowledge of the films. He seems thereby to be saying merely that he did not use the precise words alleged in the specification, that is, that he did not instruct Levy "to deny any knowledge of the . . . film he had procured, if called in connection with an official investigation . . . then pending." It may be that we are insufficiently subtle, but this appears to us to border on post-conviction confession. However, we need not resolve this question, for we are certain this was not the effect intended by appellant's argument.

As we view the problem, it is solely one of credibility of witnesses. As such, it is the primary concern of the triers of fact, the members of the court-martial—and the board of review. United States v. O'Neal (No. 25), 1 USCMA 138, 2 CMR 44, decided February 7, 1952; United States v. Schultz (No. 394), 1 USCMA 512, 4 CMR 104, decided August 5, 1952; Manual for Courts-Martial, U. S. Army, 1949, paragraph 98; Manual for Courts-Martial, United States, 1951, paragraph 100a. They have accepted Private Levy's testimony as true. We can only review in the light of the facts as found by the authorities below us on the ladder of military justice. We cannot reweigh the question of credibility. Therefore, taking, as we must, the testimony of Private Levy as true, there is ample evidence to support the conviction within the appropriate test heretofore announced by us. United States v. McCrary (No. 4), 1

**651**

USCMA 1, 1 CMR 1, decided November 8, 1951; United States v. O'Neal, supra; United States v. Shull (No. 45), 1 USCMA 177, 2 CMR 83, decided February 18, 1952; United States v. Peterson (No. 199), 1 USCMA 317, 3 CMR 51, decided April 17, 1952; United States v. Ferretti (No. 213), 1 USCMA 323, 3 CMR 57, decided April 18, 1952; Stoppelli v. United States, 183 F2d 391, 393 (CA 9th Cir). We recognize the fact that the specifications with which we are concerned here did not purport to allege the precise words used by appellant in his admonition to Private Levy, but were explicitly couched in terms of "words to the effect that." Indeed, we think it was not incumbent on the Government to allege the precise words. The heart of the offense was an admonition to tell an untruth in connection with an official investigation then pending. That was properly alleged and sufficiently proved.

Accordingly, the decision of the board of review is affirmed.

Chief Judge QUINN concurs.

Under a recently enacted rule of this Court a judge who is not present at oral arguments of the case is not permitted to participate in the decision. Judge Latimer was in the hospital at the time of argument and his views are therefore not expressed.