UNITED STATES, Appellee

v.

CHARLES LEE BRASHER, Fireman,
U. S. Navy, Appellant

2 USCMA 50, 6 CMR 50

No. 499

Decided October 20, 1952

LCDR Fredric T. Suss, USNR, for Appellant.

CDR Malcom J. Bradbury, USN, and LTJG Robert Emmet Dunne, USNR, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case was certified to us by The Judge Advocate General, United States Navy. The accused, Brasher, was tried by general court-martial[1] at the United States Naval Station, San Diego, California, on December 7, 1951, and found guilty of two instances of unauthorized absence, in violation of the Uniform Code of Military Justice, Article 86, 50 USC § 680; and of breaking arrest, in violation of the Uniform Code of Military Justice, Article 95, 50 USC § 689. He was sentenced to receive a bad-conduct discharge, to forfeit $35.00 per month for ten months, and to be confined at hard labor for ten months. The convening authority approved. A board of review in the office of The Judge Ad-

[1] 5–52–G–50.

vocate General, United States Navy, set aside the bad-conduct discharge, but affirmed that part of the sentence which included forfeiture of $35.00 per month for ten months and confinement at hard labor for the same period.

The Judge Advocate General's certificate raises the following question:

"Is the sentence, as affirmed by the board of review, legal?"

Appellate defense counsel contends that because the board of review remitted the bad-conduct discharge included in the sentence imposed by the trial court, it was required in the same action to reduce the period of confinement so that it might not exceed six months, and to reduce the forfeitures so that they might not exceed the loss of $35.00, or some lesser amount, per month for six months.

It is certainly true that the trial court could not lawfully have imposed the sentence as affirmed by the board of review in this case. The Manual for Courts-Martial, United States, 1951, paragraph 127b, reads as follows:

"A court shall not, by a single sentence which does not include dishonorable or bad conduct discharge, adjudge against an accused:

. . . . . . . . .

"Forfeiture of pay in an amount greater than two-thirds of his pay for six months.

"Confinement at hard labor for a period greater than six months—however, this limitation shall not apply in the case of a prisoner whose punitive discharge has been executed, a civilian, or a prisoner of war."

It is obvious that the sentence as it left the board of review was one which the court-martial could not have assessed.

It is also true that the convening authority here could not lawfully have approved a sentence to ten months confinement at hard labor and forfeiture of $35.00 per month for ten months—that approved by the board of review. This result is required by the following language from the Manual, supra, paragraph 88c:

". . . The convening authority may . . . approve a part of a sentence adjudged by a court-martial, but unless he is empowered to commute a sentence, that is, to change the nature of the punishment, *the sentence approved by him* must be included in the sentence adjudged by the court and *must be one that the court might have* imposed in the case. . . ." (Emphasis supplied)

Appellate defense counsel, therefore, argues that since the sentence as affirmed by the board of review was not one which the court-martial could lawfully have imposed, nor one which the convening authority could lawfully have approved, the board of review was without power to take the affirming action it did in this case. To hold otherwise, it is asserted, would be to say that a board of review may affirm punishments which the Manual, supra, Chapter XXV, pages 205–218, specifically forbids. We are, therefore, asked to disapprove as illegal so much of the sentence affirmed by the board of review as exceeds confinement at hard labor for six months and forfeiture of $35.00 per month for six months.

The Uniform Code of Military Justice, Article 66(c), 50 USC § 653, provides as follows:

"In a case referred to it, the board of review shall act only with respect to the findings and sentence as approved by the convening authority. It shall affirm only such findings of guilty, and *the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.* In considering the record it shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." (Emphasis supplied)

This Court does not share the fact-finding powers of a board of review, nor do we possess the authority of such a body to determine appropriateness of sentence as matter of fact. Cf. the Uniform Code, supra, Articles 66 and 67. Unless, therefore, the board's action in

**51**

this case was not "correct in law," it must be affirmed here. This depends solely on whether the clearly defined policy expressed in the Manual, supra, paragraphs 127b and 88c, as to court-martial and convening authority action respectively, is likewise applicable to that of a board of review. If this principle is binding on the last named agency, then the action of the board of review here was illegal. If, on the other hand it is not, then the sentence as affirmed by the board is within lawful limits.

It is to be observed at the outset that the limitation under scrutiny here is not the subject of express ▬▬▬■ provision in the Uniform Code of Military Justice, but is entirely a creature of the Manual for Courts-Martial. However, we have held that, in the absence of inconsistency, the Act of Congress—the Uniform Code—and the act of the Executive—the Manual for Courts-Martial—function on the same authoritative level, and that the usual rules of statutory interpretation apply. United States v. Lucas (No. 7), 1 USCMA 19, 1 CMR 19, decided November 8, 1951. We conclude, therefore, that certainly, so far as courts-martial and convening authorities are concerned, the six month limitation is a part of that body of law applied and enforced by this Court.

In a special and peculiar sense the sentence of the law for adjudged misconduct—military or civilian—is the product of a trial court. It alone, of all agencies of the law, is authorized to "adjudge" the law's penalty. True it is that review agencies are empowered to take varying sorts of action with respect to this phase of the trial court's task, but their function in this particular is secondary and derivative. They merely "approve" or "disapprove," "affirm" or "reverse." The trial court, on the other hand, "imposes"—it determines as an original, a basic, and a primary proposition.

The Uniform Code of Military Justice, Article 66 (c), supra, ▬▬▬■ provides that a board of review may affirm only such part of a court-martial's sentence as

it finds "correct in law." To our minds, a sentence which is "correct in law" and a "legal sentence" are interchangeable terms. It is obvious, therefore, that a board of review may affirm a legal sentence only, and may not affirm one which is illegal. In determining the legality of a juristic penalty we are forthwith remitted, therefore, to its primary source—the court-martial. We are required, we believe, to think of the matter in terms of the original, the fundamental act—that of imposition. If a trial court may lawfully assess a sentence it is a legal sentence. Conversely, if it may not, such a penalty is without warrant of law.

As applied to the present case, the reason underlying the principle set out in paragraph 127b, supra, has been expressed in substantially the following terms: If an accused military person is found to have committed acts of misconduct which in quality demand the imposition of a sentence to confinement, with accessories, for more than six months, prima facie, at least, he must be deemed unfit for further service and discharged. This is the policy declared by the President in his Executive Order, the Manual for Courts-Martial, and thus —in the absence of conflict with provisions of the Uniform Code—an essential ingredient of military criminal law. If that policy, based on that reason, is to limit the free choice of one agency of military justice as to sentence, it must perforce limit all. If it is applicable to the court-martial and the convening authority, then it must likewise govern the board of review. Certainly it must do so, in the absence of a clear—but in this case nonexistent—mandate to the contrary.

In this connection it has been suggested that the reason assigned as underlying the limitation in question is inconsistent with other current penal practices of the several services. It is recalled, for example, that one of these usages contemplates the frequent suspension of punitive discharges pending rehabilitative efforts. Presumably the point of the suggestion is that the policy reflected in the limitation is no longer so compelling as it once was, and should be pushed no further than is demanded

52

by express legislative or executive language. We find no conflict here. It is one thing to provide *against* a punitive discharge in the absence of certain circumstances, another to provide *for* one, and a quite different third to permit, and even encourage, the practice of suspension during a season of attempted rehabilitation, regardless of the duration of the confinement included in the sentence. In this last situation the thread of the punitive discharge remains throughout the probationary period, and if the accused is found to be unrehabilitable the discharge may be executed. We find here two distinct policies which in no way impinge.

We conclude, therefore, that the sentence as it left the board of review was an illegal one, and one beyond the board's power to affirm. We do not reach this result on the theory that, as a matter of statutory construction, the language of paragraph 127b, supra, is directly applicable to a board of review. Certainly, a board of review is not a "court," nor does it "adjudge" a sentence. However, we hold this provision to be declaratory of the punitive policy of the Armed Forces which, through the Uniform Code, Article 66(c), supra, is binding on boards of review.

We cannot believe that the view we have taken here is in any manner inconsistent with the broad and salutary powers over findings and sentence with which a board of review is clothed by Article 66(c), supra. Indeed, we have no slightest wish to derogate therefrom. However, we find there no warrant to act outside the law. On the contrary, we find in the Article's terms an express mandate that a board may affirm a sentence, or a part of a sentence, only if it is "correct in law"—that is, only if it is a legal sentence. A sentence to ten months forfeitures and confinement, in the absence of a punitive discharge is not a legal sentence. We have earlier declared that the language of the Uniform Code and the Manual for Courts-Martial dealing with the same subject matter should, if possible, be so construed that effect is given to the terms of both, and that the provisions of each should be so construed that no part thereof will be rendered inoperative, superfluous, void, or ineffective. United States v. Lucas, supra. We continue to believe this course to be the proper one —and following it, we are led unerringly to the conclusion we have reached.

It follows that the certified question must be answered in the negative. The record is returned to The Judge Advocate General, United States Navy, for reference to the board of review which considered the case, and action not inconsistent with this opinion.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):
I dissent.

While the result reached by the Court's opinion does not seriously influence the administration of military justice, it appears to me to be an unwarranted limitation on the powers of the boards of review to affirm such portion of a sentence as they deem appropriate. I am inclined towards leaving them unhampered so long as they do not approve a sentence which is in conflict with the Code or the Table of Maximum Punishments.

The determination of this question is to me one of Congressional intent as I do not believe that the policy considerations subsequently provided for in the Manual should be grafted on the Code so as to modify its expressed terms. I concede to and accept the concept that the sentence policy prescribed by the Manual is binding on us insofar as it extends. But, we need not enlarge its coverage to include boards of review. That is what the Court does by its holding in this case.

During the hearings on the Uniform Code of Military Justice before the Armed Services Committees of Congress one of the objections most strongly urged against Article 66 was that it conferred on boards of review unlimited latitude in modifying sentences. In spite of this objection the Article was adopted as proposed. I would assume from that and the broad language of the Act that Congress intended to grant wide powers to adjust sentences downward. I, therefore, pass to the provi-

53

sions of the Manual to determine whether they should be construed to limit the Congressional grant.

It is to be noted that the framers of the Manual, in considering the limitations with which we deal, applied them only to courts-martial and the convening authorities. When they considered the powers of the boards of review no limitation was imposed. I have every reason to assume this was intentional and if so it clearly indicates an intent on their part to leave the boards untrammeled. I find no good reason to discard the doctrine that by affirmatively applying the limitations in two instances and omitting them as to a third, an intent to exclude the latter is inferred.

The only phrase in the Act which can possibly justify the construction adopted by the Court is "as it [board of review] finds correct in law." There are two reasons which argue against that construction. First, the provisions of the same section delegate to the boards of review the right to determine from the entire record (facts and law) the sentences they deem appropriate. If possible, effect should be given to each word and phrase of the section and if a limitation is read into the section then even though a board of review determines, factually, that a certain portion of a sentence should not be affirmed it is limited by a constructive restriction imposed on it. A conflict is thus created. Second, the phrase is susceptible of a construction which would not diminish the authority conferred by Congress. The Code makes certain sentences mandatory; in other instances it authorizes such sentences as a court-martial may direct, subject to the power of the President to set maximum punishments for each offense. He has acted within that authority by approving the Table of Maximum Punishments as found in the Manual. I would, therefore, reason that when Congress used the particular phrase in the Act, it intended to restrict the board, in law, only to the extent that the sentence as affirmed must be within the limitations prescribed by the Code and the maxima set by the President. The sentence affirmed in this case is well within the limits of both.

In applying the two divergent constructions I find that under the Court's theory a board of review could approve a sentence as imposed, but it is circumscribed in affirming it in part. Without any express limitation by Congress or the President, the power to affirm all does not include the power to affirm part. Under my interpretation, if a board could affirm the sentence, as passed, it could affirm any part. This is the authority which I believe Congress intended to confer on boards of review and we should not, by judicial interpretation, diminish the grant.