UNITED STATES, Appellant

v

CHRISTOPHER CRUZ, Specialist Four (E–4), U. S. Army, Appellee

10 USCMA 458, 28 CMR 24

No. 12,852

Decided June 12, 1959

*Lieutenant Colonel James G. McConaughy* argued the cause for Appellant, United States. With him on the brief was *First Lieutenant Paul R. Walsh.*

*First Lieutenant Herbert R. Brown* argued the cause for Appellee, Accused. With him on the brief was *Captain Arnold I. Melnick.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

At his trial by general court-martial, accused pleaded guilty as charged to wrongful appropriation of a motor vehicle and fleeing the scene of an accident, violations of Articles 121 and 134, Uniform Code of Military Justice. 10 USC §§ 921 and 934, respectively. The law officer ascertained that accused understood the meaning and effect of his plea and had not entered it improvidently, and thereupon he entered findings of guilty. The court-martial then proceeded with matters pertaining to punishment and imposed a sentence of a bad-conduct discharge, confinement at hard labor for six months, and total forfeitures for the same period of time. Upon post-trial review, the convening authority approved, but suspended execution of the entire sentence with provision for automatic remission. A board of review in the office of The Judge Advocate General of the Army, however, concluded that there were no valid findings by the court-martial, and that the provident guilty plea did not remove the necessity therefor. Accordingly, the board set aside the findings and sentence as incorrect in law, and ordered a rehearing. Thereupon, the accused, who desired the benefits of the trial and the convening authority's mercy, requested reconsideration and an affirmance of the findings and sentence. However, the board concluded the error was jurisdictional and adhered to its decision. Thereafter, The Judge Advocate General certified the following issue to this Court for determination:

"Was the board of review correct in determining that the failure of the general court-martial to proceed in the manner specified by Articles 51*a* and 52*a*(2) of the Uniform Code of Military Justice materially prejudiced the substantial rights of the accused?"

A short development of the manner in which the certified issue arises should be helpful. Article 52 of the Code, 10 USC § 852, as pertinent to the present question, provides:

"No person may be convicted . . . except by the concurrence of two-thirds of the members present at the time the vote is taken."

Article 51(a), Uniform Code of Military Justice, 10 USC § 851, sets forth the rules for voting. It states in pertinent part:

"Voting by members of a general or special court-martial . . . on the findings . . . shall be by secret written ballot."

The above-quoted codal provisions do not except guilty pleas and indicate that for an accused to be convicted of an offense by a general or special court-martial, two-thirds of the court members present at the time of the voting must, by secret ballot, concur in the finding of guilty. In the case at bar those requirements were not fulfilled. In fact, as previously noted, the question of accused's guilt or innocence was never submitted to the court members. Rather, the law officer directed that findings of guilty be entered. Consequently, we must decide the effect of the failure to follow the prescribed procedures in the instant case.

In United States v Lucas, 1 USCMA 19, 1 CMR 19, one of this Court's earliest decisions, we considered a similar question. In that case, accused failed to return after expiration of his leave and was brought to trial before a special court-martial. He pleaded guilty and the president, after warning accused of the effect of his plea and eliciting from him that he desired his plea to stand, announced that the specification was proved by the plea. Thereafter, the special court received matters

pertaining to sentence, and closed to deliberate on punishment. In that instance then, it is clear the special court-martial did not proceed in accordance with Articles 51 and 52 of the Code, supra, and we held that failure to do so was error. After reviewing pertinent authorities, however, we concluded that the error was not materially prejudicial to the accused's substantial rights. In the course of our discussion we noted that:

". . . A plea of guilty is a confession of guilt and equivalent to conviction. It removes from the trier of the fact any question of innocence or guilt. If the plea is regularly made there remains only the requirement by the court of imposing an appropriate sentence."

And in answer to the contention that the court-martial might, on secret ballot, have voted to find accused not guilty in spite of his provident plea, we stated:

". . . It may be that some juries, contrary to their obligation, in exceptional cases, disregard both the law and the facts to render a verdict in favor of the defendant. Assuming that that sometimes happens, we cannot presume such a result might have been possible in this case. Courts-martial are presumed to return a true and just finding according to the evidence. The evidence of guilt was conclusive. . . . There remained only a vote on the single issue of whether the accused was guilty of being absent without leave. He had pleaded he was so it was inconceivable that the court would have found otherwise."

Applying these principles, then, it would follow in the case at bar that accused has not been prejudiced. The plea admitted every element of the offenses and negated every possible theory of defense. In addition, the facts showing the commission of the offenses were stipulated and presented to the court. Under those circumstances it is unthinkable to conclude the court-martial would have returned a finding at variance with the plea. Appellate defense counsel contend, how-

ever, and the board of review held, that we are here faced with a different situation than was the case in *Lucas*, which was a special court proceeding. In the present instance it was the law officer who ordered findings of guilty entered. The law officer is not a fact finder of a general court-martial and does not participate with the court members upon findings or sentence. In that respect he differs from the president of a special court who is a court member, and from a civilian judge who can act in the absence of a jury when a plea of guilty is entered. It is urged, therefore, that the entry of findings of guilty by the law officer was a usurpation by him of the powers and duties of the general court-martial members. Consequently, the argument continues, there were in fact no findings by the court and there was no jurisdictional basis for proceeding with the case or for the sentence imposed upon the accused.

This approach was rejected by a board of review in United States v Brumbaugh, 26 CMR 649. There, just as in the instant case, the law officer, after having accepted accused's guilty plea, directed that findings of guilty be entered, and the court-martial then proceeded with matters pertaining to sentence. The board of review, in resolving an issue like that before us, held that accused was not prejudiced, the principal opinion stating:

". . . the legal situation is so closely analogous to that existing in the *Lucas* case as to wipe out any significant distinction based on the peculiar position of a law officer as contrasted with that of the president of a special court-martial."

We reach the same conclusion but prefer to develop our reasoning. Appellate defense counsel's approach, insofar as it points out that the law officer was an interloper in directing a finding of guilty be entered, is entirely correct. The extent of a law officer's proper participation in this area is to assist the court, after it has finally voted thereon, in putting the findings in proper form. See Articles 26(b) and 39, Uniform

460

Code of Military Justice, 10 USC §§ 826 and 839. There can be no question, therefore, that the law officer's order purporting to enter findings of guilty in the case at bar was, since it encroached into the province of the court members, an irregularity, and there were no findings voted by them. At this point, however, the validity of the defense argument ends, for it overlooks entirely the fact that, in announcing for the court members a finding which they have never reached, the president of a special court-martial is also an interloper. True it may be that he properly acts as their spokesman when the findings they have reached are announced, but he, no more than a law officer, has any authority whatever to usurp the functions of the court-martial members, vote for them, and enter a finding in which they have had no part. In *Lucas*, supra, it can be validly argued that no findings at all were entered. There the president merely stated, prior to passing on to matters relating solely to sentence, that the specification was proved by the plea. Even if we equate that statement to a purported entry of findings, however, as we have previously noted, the announcement was completely beyond the speaker's province. Hence, whichever view is taken of the president's statement, there were in *Lucas*, just as in the instant case, no findings voted by the court-martial.

Accordingly, when we reduce the contention of appellate defense counsel to its essentials, it is but an invitation to overrule the long-standing holding of *Lucas*—an invitation which we must decline. There, as in the case at bar, the accused was regularly arraigned before a court-martial that was in every way properly constituted, and in no way impaired or disqualified from proceeding. In each instance the accused conceded his guilt and persisted in his plea after it had been ascertained it was not entered through mistake and that he understood its effect. The question, then, is not at all jurisdictional as appellate defense counsel assert, but rather simply whether an accused who · has judicially confessed his guilt in open court can legitimately complain of being prejudiced when the court is not instructed, does not close to deliberate and vote in secret, and findings are announced by the law officer. We are constrained to conclude that he cannot. The contrary view, that failure to follow the prescribed procedure under these circumstances prejudices an accused, would require that we elevate form over substance when the accused does not insist on the form. This we are not inclined to do, for with the record in such a posture the court members could not as reasonable persons return any verdict except a finding of guilty. As the Chief Judge, writing for a unanimous Court, observed in United States v Palacios, 9 USCMA 621, 622, 26 CMR 401:

> "A plea of guilty is a confession of guilt which like a 'verdict of a jury . . . is conclusive.' Kercheval v United States, 274 US 220, 223, 71 L ed 1009, 47 S Ct 582 (1927); . . ."

If, as therein stated, a plea of guilty is conclusive of guilt, the accused has only been denied the procedural step of properly converting the plea to legal findings. Unquestionably, a failure to grant him that statutory right is an error of law, but procedural errors without prejudice do not compel reversal. Certainly, here the accused has no just cause for complaint. At best, he was denied a statutory right he did not want. No evidence whatever inconsistent with his plea of guilty appears in this record. Neither does he contend it contains anything that would cause a court member to hesitate to return a verdict against him nor that his . plea . was . improvident. . Indeed, quite to the contrary, his ▌ actions provide yet another ground which requires us to overturn the decision of the board of review. He was represented by certified legal counsel and at trial the law officer apprised the parties in an out-of-court hearing that, in view of the plea, he proposed simply to enter findings of guilty. Not only did the defense expressly state it had no objection with respect to the matter of findings but, on review, after the board ordered the findings set aside, the accused protested that holding and petitioned the board

to reconsider its decision and affirm the findings and sentence. In requesting that his conviction be affirmed, he characterized any irregularity as procedural rather than jurisdictional and specifically waived all possible error. And even at this level, accused does not assert his innocence or contend he was prejudiced. Rather, he for the first time protests the unusual procedure in which he expressly acquiesced at trial and later championed before the board of review. His present position is an about-face, for he now argues the procedural deficiency he invited requires a holding that there are no findings to support his conviction or sentence. The board of review considered waiver, but concluded the error was jurisdictional and that no act of the accused could confer jurisdiction on the court to proceed with sentence. We believe the board placed too much emphasis on regularity during trial, for the deficiency here did not affect jurisdiction and could, therefore, be knowingly waived. Accordingly, we note in line with prior cases that the accused, having induced and approved the procedure followed, both at trial and at prior appellate stages, is foreclosed from rejecting in this Court a proceeding he so ardently embraced in the lower tribunals. See United States v Jones, 7 USCMA 623, 23 CMR 87; United States v Smith, 2 USCMA 440, 9 CMR 70; United States v Masusock, 1 USCMA 32, 1 CMR 32. See also Smith v United States, 173 F 2d 181 (CA 9th Cir) (1949). As we said in *Lucas,* supra:

". . . There are, however, trial proceedings which can be waived by an accused and if he pleads guilty to an offense after being fully and fairly informed of the consequences of the plea we can see no prejudice because formalities were not strictly followed."

It might be advisable, however, to voice again the caveat we expressed in the same case:

"By reversing the board of review we do not wish to be understood as holding that courts-martial should not strictly comply with the provisions of the . . . Code and the Manual.

. . . The fewer the errors of law the fewer the complaints about injustices."

Apparently, the law officer in this case, with consent of counsel, knowingly adopted a short form proceeding to expedite the hearing. The time saved, if any, was not appreciable but, even if we assume otherwise, we disapprove of expedients which are in conflict with the Code. Law officers are required to follow the law even though some procedural steps may appear to them to be unnecessary. Congress has not seen fit to do away with findings by a court-martial on guilty plea cases, and law officers should not question the wisdom of the legislation. It is their duty to follow the law and not to disregard it in the interest of time. Were there present in this record the remotest possibility that the accused was harmed by the proceedings followed, we would be compelled to affirm the board of review.

The certified question is answered in the negative. The decision of the board of review is reversed, and the record is returned to The Judge Advocate General of the Army for further action not inconsistent with this opinion.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

Following the acceptance of accused's plea of guilty, the law officer in this case stated that the specifications and the charges had been proven by the plea; that voting by the court on the accused's guilt or innocence was unnecessary; and directed that a finding of guilty of all charges and specifications be entered in the record. The court thereafter considered only the question of the accused's sentence. The board of review set aside the findings and sentence and directed a rehearing in view of the court-martial's failure to vote upon the findings. The Judge Advocate General of the Army certified to this Court the question of the correctness of the board of review's decision. The majority finds that the entry of the findings by the law officer, albeit erroneous, did not prejudice the accused.

462

The author of the principal opinion notes that "Congress has not seen fit to do away with findings by a court-martial on guilty plea cases." By its reversal of the board of review today, this Court, however, does precisely that, for the services will seize upon its failure to find prejudice, as they did following the decision in United States v Lucas, 1 USCMA 19, 1 CMR 19, and institute in their courts-martial the practice of eliminating deliberation and voting on the findings. Another example of the pernicious effect of sanctioning the disregard of positive legislative commands is found in United States v Shaffer, 2 USCMA 75, 6 CMR 75, and United States v Stewart, 2 USCMA 78, 6 CMR 78, wherein this Court, by its holding of no prejudice, laid the foundation for the current military practice of excusing challenged court members without the voting required by the Uniform Code of Military Justice, Article 41, 10 USC § 841.

Articles 51 and 52, 10 USC §§ 851 and 852, unmistakably require the members of a court-martial to vote upon the issue of the accused's guilt or innocence, and no exception is made concerning cases in which the accused has entered a plea of guilty. Indeed, the majority concedes that accused's plea of guilty did not eliminate the statutory requirement for findings of guilty by the court members, duly reached after voting by secret written ballot, and that the law officer's purported entry of a verdict of guilty was erroneous. They conclude, however, the error was merely procedural and, as such, was nonprejudicial and waived. Article 59, Code, supra, 10 USC § 859. It is this terminal proposition, dispositive of the case, that I stringently protest.

A court-martial is not a private and personal tribunal for the services to use as they see fit, but a judicial body created by Congress for the administration of justice that we might have in the armed forces truly a government of laws and not of men. The type of proceedings approved today returns control of military justice to the commander, for it forever forecloses the court members from questioning the voluntariness of the accused's plea or obtaining the facts in the case, and interposes between the convening authority and the accused only the thin shield of the law officer, himself frequently the subordinate of the individual who has ordered the trial.

The action taken in the trial of this case was that of the law officer rather than that of a general court-martial convened under the authority granted in the Code, supra, by Congress. In Kotteakos v United States, 328 US 750, 66 S Ct 1239, 90 L ed 1557 (1946), the Supreme Court examined a harmless error statute similar to Article 59, supra, noted that these enactments were designed to eliminate the criticism that appellate courts " 'tower above the trial of criminal cases as impregnable citadels of technicality,' " and concluded they were not intended to sanction departures from constitutional norms or specific legislative commands. The requirement for voting on the findings, after due deliberation, was unequivocally set forth by Congress in the Uniform Code after extensive hearings. Had they believed it proper for the law officer to render judgment alone, they would have specifically provided for such action, as it would have eliminated a practice in military law which antedates the founding of our Nation. On the contrary, however, the plea of The Judge Advocates General that the law officer be permitted to participate in the voting on the findings was rejected, and it was legislatively determined his action in connection with the court's verdict was limited to placing the findings in proper form. House Report No. 491, 81st Congress, 1st Session, page 6; Senate Report No. 486, 81st Congress, 1st Session, page 6; Article 39, Code, supra, 10 USC § 839. The departure in this case from a specific Congressional direction is in itself prejudicial. Kotteakos v United States, supra.

Finally, I must inquire concerning the basis on which the sentence in this case rests. It is fundamental that a defective verdict vitiates the foundation for sentencing an accused. 23 CJS, Criminal Law, § 1414; Wharton's Criminal Law and Procedure, § 2129, et seq. The absence of any verdict at all is, of course, a much more serious lapse, and

463

compels the conclusion that the board of review acted properly in determining the error was jurisdictional in nature and could not be waived.

In summary, I believe our approval of the departure from a statutory norm in this case is clearly wrong and frees the services from a salutary restraint imposed upon them by the Congress. I point out to my brothers the similarity between the language used in Article 52(a), involved here, and Article 52(b), regarding voting upon the sentence. Under the construction of the former provision handed down today, it logically follows that the accused may also waive his right to have the court members adjudge the penalty for his misconduct. Thus, despite the contrary mandate of the legislative branch, we may be soon faced with a full-scale trial by the military judge alone in which the court members participate only as interested spectators—a trial under men and not a trial under law.

I would answer the certified question in the affirmative, and affirm the decision of the board of review.