UNITED STATES, Appellee,

v.

**Private (E–1) Michael W. FREEMAN,
SSN 524–11–5967, United States
Army, Appellant.**

SPCM 15839.

U. S. Army Court of Military Review.

28 Sept. 1981.

Major Robert C. Rhodes, JAGC, and Captain Marcus C. McCarty, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major John T. Edwards, JAGC, Major Michael L. De-Busk, JAGC, and Captain Michael R. Smythers, JAGC, were on the pleadings for appellee.

Before FULTON, CLAUSE and McKAY, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

The underlying issue in this case is whether, when new members are required to be added to a court-martial during a trial, and the trial is not begun anew, the new members may be allowed to read for themselves the evidence previously received or whether that evidence must be read aloud to them in the presence of the other court members. We conclude that, although the Uniform Code of Military Justice requires that the previous evidence be read aloud to all of them, rather than permitting the new members alone to read it for themselves,[1] the failure to do so may be waived by the defense and was waived in this case.

So far as disclosed by the briefs of the parties and our own research, this is a case of first impression, the facts of which are as follows: The military judge accepted appel-

---

1. Article 29(b), Uniform Code of Military Justice, 10 U.S.C. § 829(b) (1976).

lant's pleas of guilty to all charges.[2] A sentence hearing then began before the members of the special court-martial, who, after challenges, included two commissioned officers and two noncommissioned officers. The prosecution presented evidence which consisted of administrative information read from the first page of the charge sheet; three records of previous nonjudicial punishment, from which the offenses charged and punishment imposed were read aloud by the trial counsel; and a stipulation of fact as to the circumstances of the property offenses, which the trial counsel also read aloud. The defense then presented appellant's testimony under oath in extenuation and mitigation.

During a recess after appellant's testimony, the trial counsel learned that the two noncommissioned officer court members had served earlier as court members in the sentencing of another soldier who was involved in the same property offenses.[3] When this was disclosed, defense challenges to them for cause were granted and reduced the court below the statutory minimum of three members as well as depriving it of a required minimum of one-third enlisted membership.[4] During a six-day recess in the trial, two new members, a Sergeant Major and a First Sergeant, were appointed to the court.[5]

In the session at which the challenges were granted, the military judge had said, "[The court reporter] is going to type up the record verbatim. Additional court members who are detailed to this court will read the record of trial with the exception of my comments to ... [the court members]. They will read the record of trial. I will direct the 82d Airborne Division [sic] to obtain sufficient copies for the court members who are going to be newly detailed...." Record at 49.

When the court reconvened, the following took place before any members were brought in:

MJ: Captain Drach, have you obtained a complete copy of the verbatim transcript of this trial?

TC: Yes, your honor.

MJ: Have you segregated the essential material for the court members from the past voir dire and administrative business that we discussed at the last trial?

TC: Yes, your honor. Defense counsel and I, I believe, have agreed court members should receive pages 36 through 44, inclusive....

MJ: Now, all you need to do is when the new members come in—is to go over the pertinent data contained on the first page of the charge sheet and give them pages 36 through 44.

TC: Yes, your honor....

MJ: Okay, have the new members come in and present them with pages 36 through 44.[6]

---

2.  Various violations of Articles 121 and 134, Uniform Code of Military Justice, §§ 921, 934 (1976), involving unlawful entry of a post contractor's tool shed, larceny of tools, wrongful appropriation of the contractor's truck, and unrelated charges of wrongfully possessing and using marihuana.

3.  The two court members did not realize that the same events were involved until they heard the stipulation of fact. It appears to us that even then the court members did not make the matter known, but that the trial counsel in the earlier case noticed them and informed the trial counsel in this case of their earlier participation.

4.  *See* Articles 16(2), 25(c)(1), Uniform Code of Military Justice, 10 U.S.C. §§ 816(2), 825(c)(1) (1976).

5.  It so happened that one of the two commissioned members of the court was the First Sergeant's company commander and rating officer. Although there was no challenge on that basis, the circumstances of this case suggest that close attention to detail ought to be paid by those responsible for advising convening authorities concerning the composition of courts-martial.

6.  Pages 36–44 of the Record set forth the data read from the first page of the Charge Sheet (such as appellant's enlistment term, organization, grade, and pay rate), state that the offenses and punishments from the three records of nonjudicial punishment and the entire stipulation of fact were read to the court members (but do not set forth the reading verbatim; see note 7, infra), show that certain related photo-

DC: Will they be reading that, your honor, before voir dire of the members as to sentencing and before preliminary instructions from the bench?

MJ: Pardon me?

DC: Will the new members be—

MJ: They'll be treated just like the old members. They will be voir dired, and after voir dire we'll give them a copy of the record and let them read it.

DC: Yes, your honor, that is the only point that needed [to be] clarified.

Record at 50–51.

The two new court members then entered, while the two remaining original members waited in the deliberation room. After preliminary instructions by the military judge, and voir dire by the judge and counsel (there were no challenges), the trial counsel read aloud from the first page of the charge sheet, the records of nonjudicial punishment, and the stipulation of fact, as she had done at the previous session.[7] The record then shows the following:

MJ: Would you hand the court members pages 36 through 44 of this record? They will be marked an appellate exhibit.

(Reporter marked Appellate Exhibit VI, which was handed to members.)

MJ: Now, that—those documents that you received are verbatim transcripts of the last session of this trial. We had an interruption in that trial. The court members who are in the deliberation room right now heard all that testimony live. I want you to take your time, read this, and let me know by raising your hand when you've completed reading those documents. "TC" stands for trial counsel, the prose-

cuting attorney. Of course, "DC" is defense counsel; "MJ" is military judge. "ACC" is the accused.

(Pause) [We assume the new court members read the transcript, then so signified.]

MJ: Okay, go into the deliberation room at this time. You will be called back shortly with the rest of the court members.

Record at 56.

The full court then was seated, heard the arguments of counsel as to the sentence, and received instructions from the military judge. After deliberating, they imposed a sentence of bad-conduct discharge, confinement at hard labor for six months, and forfeiture of $334.00 pay per month for six months. In accordance with a plea bargain, the convening authority reduced the periods of confinement and pay forfeiture to four months, but approved the sentence otherwise.

Article 29(c) of the Uniform Code of Military Justice provides that when the number of members of a special court-martial is reduced below the required minimum of three, as in this case, a new member or members shall be appointed and—

The trial shall proceed with the new members present as if no evidence had previously been introduced at the trial, *unless* a verbatim record of the evidence previously introduced before members of the court or a stipulation thereof is *read to the court* in the presence of the military judge, if any, the accused and counsel for both sides. . . . [Emphasis added.][8]

Similarly, paragraph 41 *f* of the Manual for Courts-Martial, United States, 1969 (Revised edition), prescribes that, when a newly detailed member of a special court-mar-

---

graphic and documentary exhibits were admitted into evidence, and then set forth verbatim the appellant's testimony on direct examination, cross-examination, and examination by the court.

**7.** The transcript does not set forth verbatim what was read in either session from these

exhibits, which became part of the record, but, in the absence of any objection or notation to the contrary, we will assume that both readings were accurate, complete, and identical.

**8.** 10 U.S.C. § 829(c) (1976).

tial is seated during a trial, "the trial shall proceed as if no evidence had previously been introduced, unless a verbatim record of the evidence previously introduced is read, or a stipulation thereof is read to him, in the presence of the military judge, if any, the accused, counsel, and the other members of the court." [9]

Appellant urges that we order a rehearing on the sentence because the military judge did not follow the prescribed procedure and instead allowed the new members to read a portion of the prior proceedings (his testimony) for themselves, rather than having it read to them. This procedure, he contends, prejudiced his cause because the reading aloud of only the Government's evidence gave it "undue weight and credibility" in contrast to his own, as shown by the maximum sentence which was adjudged. The Government responds that the procedure used is not expressly prohibited, that any objection was waived by the defense counsel's concurrence in the procedure followed, and that appellant, instead of being harmed by the procedure, "benefited because the new members were able to take their time and read the evidence rather than merely listen to someone read it to them." Government Brief at 5.

■ The existence and specificity of the codal requirement either to begin the trial anew or to read the previously received evidence to all of the members in open court means that the matter is not one left to the discretion, however sound, of the trial judge. The military judge erred in failing to follow the prescribed procedure.

■ However, as we view the record, the defense counsel did not merely fail to object to the departure from the procedure prescribed by the Code and Manual, he clearly acceded to it. The trial counsel announced that "Defense counsel and I . . . have agreed" that identified pages of the transcript should be shown to the court members. The defense counsel thereafter indicated that his sole concern—the only point needing to be "clarified"—was that the new court members should be subjected to voir dire examination and receive preliminary sentencing instructions before undertaking to read the transcript.

■ Except as to matters denying an accused due process of law or depriving the accused of a fair trial or fair sentence hearing, trial errors that are moved or acceded to by the defense counsel may be regarded as waived.[10] This doctrine has been applied when defense counsel sought a combined sentence hearing after his client had entered pleas of guilty in two separate proceedings,[11] when an erroneous instruction

9. Similar provisions apply to general courts-martial. See Article 29(b), Uniform Code of Military Justice, 10 U.S.C. § 829(b) (1976), and Manual for Courts-Martial, supra, paragraph 41 e. In view of the unusual placement of commas in paragraph 41 f quoted above, the Government interprets that provision as requiring that only a stipulation be read to a court member and that the other evidence may be read by him. We reject that interpretation because it appears to us that such a departure from the Code is not only impermissible, but was unintended, particularly as the Manual also adds that the reading must be "in the presence of . . . the other members of the court." Manual for Courts-Martial, supra, paragraph 41 e, f.

10. See United States v. Sykes, 11 M.J. 766 (N.M.C.M.R.1981); United States v. Benoit, 43 C.M.R. 666 (A.C.M.R.1971). Adoption of this view by the Court of Military Appeals usually is traced to United States v. Stringer, 4 U.S.C.

M.A. 494, 16 C.M.R. 68 (1954), although the case was decided on other grounds, and United States v. Masusock, 1 U.S.C.M.A. 32, 1 C.M.R. 32 (1951). Masusock involved the admissibility of evidence, as to which now see Mil.R.Evid. 103(d). Another significant body of cases, of which United States v. Flippen, 16 U.S.C.M.A. 622, 37 C.M.R. 242 (1967), is an example, has involved instructions to the court members. In some cases, the degree of certainty with which a waiver must be manifested has been an issue. See, e. g., United States v. Harden, 1 M.J. 258 (C.M.A.1976); United States v. Heflin, 1 M.J. 131 (C.M.A.1975); United States v. Graves, 1 M.J. 50 (C.M.A.1975). In light of the facts previously mentioned, we do not regard the waiver in this case as only a passive one.

11. United States v. Butler, 3 M.J. 211 (C.M.A. 1977); cf. United States v. Cruz, 10 U.S.C.M.A. 458, 28 C.M.R. 24 (1959).

was requested by defense counsel,[12] when the defense counsel not only failed to object to an impermissible re-enactment during a view but participated in it,[13] and when the defense counsel questioned a court member concerning an unauthorized view of the crime scene but made no objection or challenge.[14]

We see no reason why the waiver should not be enforced in this case. While there are apparent advantages in reading aloud the previous evidence in the presence of the full court, which those who framed the Uniform Code might have recognized, there is no basis for appellant's argument that the procedure followed in this case tended to give greater weight or credence to the evidence in aggravation. Nor is there any indication or contention that any inaccuracy or unwarranted inflection crept in. That the sentence adjudged was the statutory maximum for special courts-martial could as well be due to other factors evident from this record. We find no deprivation of due process or denial of a fair sentence hearing.[15]

The findings of guilty and the sentence are affirmed.

Judge CLAUSE and Judge McKAY concur.

---

**12.** *United States v. Jones*, 7 U.S.C.M.A. 623, 23 C.M.R. 87 (1957); *see United States v. Smith*, 2 U.S.C.M.A. 440, 9 C.M.R. 70 (1953).

**13.** *United States v. Martin*, 19 C.M.R. 646 (A.F. B.R.1955).

**14.** *United States v. Reid*, 14 C.M.R. 438 (A.B.R. 1954); *see United States v. Wolfe*, 8 U.S.C. M.A. 247, 24 C.M.R. 57 (1957).

**15.** *Cf. United States v. Groce*, 3 M.J. 369 (C.M. A.1977) (court member sleeping during judge's instructions may deny fair trial); *United States v. Hawkins*, 2 M.J. 23 (C.M.A.1976) (judge's failure to advise accused of allocution rights, even if defense counsel had done so, required sentence reversal).