UNITED STATES, Appellee

v

CHARLES L. PRATT, Private, U. S. Marine Corps, Appellant

17 USCMA 464, 38 CMR 262

464

No. 20,738

April 5, 1968

Major L. G. Bohlen, USMC, argued the cause for Appellant, Accused.

Captain R. S. Gasiorowski, USMCR, argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel C. R. Larouche, USMC.

## Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Camp Pendleton, California, charged with three specifications of absence without leave, in addition to desertion, failure to obey a lawful order, and two specifications of breaking restriction, in violation of Articles 86, 85, 92, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 885, 892, and 934, respectively. He pleaded guilty to all charges and specifications thereunder. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for four years. The convening authority, however, approved only so much of the sentence as provided for a bad-conduct discharge, total forfeitures, and confinement at hard labor for eighteen months. A board of review in the office of the Judge Advocate General of the Navy thereafter affirmed the findings and sentence as amended. Now, pursuant to the certification authority existing in Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, the Judge Advocate General of the Navy inquires:

"Was the procedure employed by the law officer to test the voluntariness and providency of the accused's anticipated pleas of guilty materially prejudicial to the substantial rights of the accused?"

This question, of course, is singularly directed to the arraignment portion of Private Pratt's court-martial. Thus, it is to this area of the trial that we now direct our attention.

Though tried individually, the appellant was arraigned with four others. Their misdeeds appear completely unrelated to those now before us. On the other hand, all, including the appellant, had successfully negotiated pleas of guilty. When, at the inception of trial, this fact became evident, the law officer recessed the proceedings so that he might ascertain the providence of these pleas. During the out-of-court hearing that followed, each of the five responded in affirmative sequence when asked if they understood their right to plead not guilty, the elements of the offenses to which they were pleading, and the maximum punishment that could be adjudged based upon their pleas alone. Pratt acknowledged, as did the others, that he had voluntarily originated the decision to negotiate the plea. Each

**465**

indicated satisfaction with defense counsel and a belief that the plea was in his best interest. It was agreed the pleas of guilty were being entered and maintained because every man was guilty as charged.

Pratt conceded, pursuant to further questioning, that he had executed a statement identified as Appellate Exhibit 1. This document forbids counsel's argument that Pratt should be retained in the Marine Corps. Fully aware of the effect a punitive discharge might have on the balance of his life, Pratt insisted in pursuing this course even though the law officer characterized such action as a "very grave mistake." The latter, nevertheless, albeit reluctantly, accepted Pratt's plea of guilty. At this juncture, the out-of-court hearing had been terminated and the appellant stood alone, the other accused having withdrawn from the courtroom. In this state, the court-martial proceeded to an end.

Counsel for the Government see the law officer's inquiries sufficient, for clearly shown is the provident and voluntary character of the plea. That several others were questioned at the same time does not, in the eyes of the Government counsel, affect the integrity of the proceeding. The inquiry, a discretionary matter, conforms to basic standards. Cf. Manual for Courts-Martial, United States, 1951, paragraph 70*b*. Regardless, accused stands unharmed. The point is made that from the outset he conceded guilt and insisted in maintaining a plea of guilty. In sum, he gained that which he set out to achieve.

In opposition, counsel for Pratt adopt the rationale expressed by the dissenting board of review member in this case, who, contrary to the majority, believes that *en masse* examination of diverse accused under such circumstances constitutes reversible error in and of itself. Primarily, this approach has its origin in several board of review opinions concerning this very type of *en masse* proceeding. Representative are the cases of United States v Davis, NCM 67–2795 (October 26, 1967), and United States v Logan,

NCM 67–2962 (October 26, 1967).[1] Neither, however, reflect unanimity of thought for each contains a main, concurring, and dissenting opinion. It is to the first of the three offerings that we pay specific heed.

In the matter of arraignment, Manual for Courts-Martial, supra, paragraph 65*a*, was construed as contemplating multiple arraignment by providing that when charges were read, "each of the accused" would plead thereto. Note was taken that other Manual portions similarly refer to the presence of *several accused* during the swearing of court personnel. Manual for Courts Martial, supra, paragraphs 53*b* and 112*c*; see also Manual, supra, Appendix 8*a*, page 505. It was nonetheless decided that neither the Uniform Code nor the Manual "authorize examination to ascertain providency of guilty pleas of any person accused in the presence of another or other persons accused either before or after arraignment; nor do they authorize such examination by the law officer in an out-of-court hearing prior to arraignment." Community examination was held to be "an unsound mode of procedure which may variously work a disservice to persons accused, the public, or both, in some instances." Thus, "If convictions upon plea of guilty are to have the assured fairness and finality which will permit later protests to fall 'on deaf ears,' which is the desideratum indicated by *Chancelor* [16 USCMA 297, 36 CMR 453], 'bull pen' examinations of persons accused cannot be tolerated." United States v Logan, supra, at pages 9 and 10. We quite agree with such a conclusion.

There is nothing finite in either the Code or the Manual that authorizes collective arraignments. The administration of oaths to court functionaries in the presence of accused is an entirely separate and unrelated matter. Cf. Manual for Courts-Martial, supra, paragraphs 112 and 65; United States v Robinson, 13 USCMA 674, 33 CMR 206. Moreover, we see nothing

---

[1] Though unreported, copies of each accompany the defense brief.

even suggestively permissive regarding the arraignment process derived from the inclusion in paragraph 65a of the Manual, supra, of the phrase "each of the accused." In a proper case, i. e., a trial of joint or common offenses, there are plural defendants. Cf. Manual for Courts-Martial, supra, paragraphs 26d, 33l, and 53c. Related portions of the Manual, including those previously cited, must therefore be read with these possibilities in mind and interpreted accordingly. Suffice it to say, the instant proceeding falls within neither of the two above categories, there being no indication any of the accused acted pursuant to a common intent or, in the absence thereof, that the offenses charged were carried out at the same time and place and were provable by the same evidence. Cf. paragraphs 26d and 33l, supra. In essence, this mode of arraignment has little logic and finds no support in either the Uniform Code or Manual for Courts-Martial.

Every such error may not embrace prejudice. However, unmistakably conspicuous is the potential for evil. We echo, therefore, the appraisal of others that ignorance on the part of any one accused may well be concealed by a sheeplike following in the refrain of others. Further, this same arraignment will detract significantly from the law officer's efforts to instill in an accused that personal relationship so vital and necessary if the latter is to benefit from the advice and experience that the law officer might favorably bring into play in behalf of an accused. Cf. United States v Simpson, 17 USCMA 44, 37 CMR 308. In short, the utilization of en masse examinations is a procedure that should be ended forthwith.

In the assessment of prejudice, the case at hand represents the exception rather than the rule. Private Pratt is an accused who had unhesitatingly maintained his plea of guilty. Absent is even the slightest suggestion that it was entered involuntarily or unknowingly. The existence of Appellate Exhibit 1 renders certain these conclusions. It is there shown that defense counsel had advised Pratt to work for a return to duty, telling him, at the same time, the harmful effects of a punitive discharge. Possible defenses were also discussed. Yet, in spite of these assurances, the accused insisted on entering a plea of guilty, wanting out of the service, feeling that restoration to duty would lead only to still more disciplinary action. Though he has since had a change of heart, desiring now such a restoration, this reassessment is of post-trial vintage. There is no reason to believe that correct arraignment practices would have brought about a different plea in light of these attending circumstances. Thus, we are satisfied that in this record error exists unaccompanied by prejudice. Cf. United States v Butler, 9 USCMA 618, 26 CMR 398; United States v Griffin, 15 USCMA 135, 35 CMR 107.

One last matter requires comment. While this is a certified case, here, as in United States v Cummings, 17 USCMA 376, 38 CMR 174, the stipulated chronology accompanying the memorandum of pretrial agreement expressly waives any issue of speedy trial or due process. Such a waiver is contrary to public policy and is thus void. We so held in United States v Cummings, supra. There, faced with a record of trial barren of any explanation for the delays reflected in the stipulated chronology, we reversed and remanded to make certain that an improper pretrial agreement did not compel Cummings to forego defenses that might be properly his.

The chronology in the instant case establishes the following:

"STIPULATED CHRONOLOGY

10 Oct 1966–14 Mar 1967 In desertion

14 Mar 1967 Apprehended

15 Mar 1967–23 Mar 1967 Confined, Lowry Air · Force Base, Denver, Colorado

24 Mar 1967–to date Confined, Base Brig, Marine Corps Base, Camp Pendleton, California

11 Apr 1967 Request for counsel forwarded to Base Legal

12 Apr 1967 Charge sheet prepared

19 Apr 1967 Counsel made available by the Commanding General

27 Apr 1967 Informal pretrial agreement submitted by the accused

8 May 1967 CO, Staging Bn, recommended trial by GCM

11 May 1967 SLO advice letter prepared for submittal to CG, MCB, Cam Pen

15 May 1967 Charges referred to trial by CG, MCB, CamPen

18 May 1967 Error in charges discovered by trial counsel in preparation of case for trial

19 May 1967 Case returned to Staging Bn for further investigation

22 May 1967 New preliminary inquiry begun

29 May 1967 New charge sheet prepared

31 May 1967 Accused referred to formal pretrial investigation

5 Jun 1967 Lawyer counsel made available

6 June 1967 Accused submits informal pretrial offer after conference with defense counsel

6 Jun 1967 Accused waives Article 32

14 Jun 1967 CO, Staging Bn, recommends trial by GCM

20 Jun 1967 Rough SLO prepared."

Readily seen is an almost immediate preparation of charges followed by constant progression toward trial by court-martial.

This record, then, is not so barren of explanation that we need remand, uncertain of whether or not Pratt was restricted in the defense of his case. The error now challenged contains no prejudice to this accused. Cf. United States v Lucas, 1 USCMA 19, 1 CMR 19, citing Kotteakos v United States, 328 US 750, 90 L ed 1557, 66 S Ct 1239 (1946).

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

**468**

FERGUSON, Judge (dissenting):

I dissent.

I agree with my brethren that it was indeed egregious error to hold an *en masse* examination into the guilty pleas of several accused whose cases were unrelated. I would, however, go further, and, in accord with the several boards of review which have examined the problem, hold such to be reversible error *per se*. In addition, I disagree with the attempt herein to distinguish United States v Cummings, 17 USCMA 376, 38 CMR 174, and conclude that reversal is likewise required on the basis of the Court's holding in that case.

This Court has the responsibility to supervise the administration of military justice and to see that procedures are not employed which violate the spirit, if not the letter, of the Uniform Code of Military Justice. United States v Rinehart, 8 USCMA 402, 24 CMR 212. The United States has heretofore conceded our authority in this area. United States v DuBay, 17 USCMA 147, 37 CMR 411. In my opinion, this is an appropriate occasion for its invocation.

Seemingly, there is no area in military justice which gives greater difficulty to the armed services than examination and acceptance of a guilty plea. Though we have laid out in detail a simple procedure employing the standards set down by Congress in 1951, the services are not content to follow the law. See United States v Chancelor, 16 USCMA 297, 36 CMR 453. They continually seek short cuts, as if the employment of judicial techniques are bothersome and as if they fear some accused might realize his plight and put the Government to the proof of its case.

Such has been the case from the beginning. Though Congress made clear its intent that there be an informed and complete inquiry on the record into the providence of each plea of guilty, on promulgation of the Manual for Courts-Martial, United States, 1951, this was reduced to an arid formula which was practically meaningless to an untutored accused.

See United States v Chancelor, supra. Though Congress specifically required the court-martial to be instructed *in all cases* on the elements of the offense, those charged with administering military justice soon eliminated that need on the basis no prejudice could flow from instructional omissions in guilty plea cases. United States v Lucas, 1 USCMA 19, 1 CMR 19. On a similar basis, a refusal to allow the court to vote on findings based on such a plea soon followed. See United States v Lucas, supra, and United States v Cruz, 10 USCMA 458, 28 CMR 24. Finally, attempts were even made to do away with an inquiry into the plea's providence in court, with the whole matter being handled in an unauthorized and informal hearing prior to the court being convened. United States v Robinson, 13 USCMA 674, 33 CMR 206.

Now we have come to the assembly line procedure of military justice. Again, to save time and effort, accused are arraigned in groups and their pleas examined by rote, with trial before the same court-martial proceeding individually. Of course, such procedure is not authorized under either the Code or the Manual, supra, but it does no good merely to make this statement and proceed to hold the matter nonprejudicial. One only has to examine the holdings in United States v Lucas and United States v Cruz, both supra, to understand that this very lack of prejudice will be used as a basis to continue the practice. Moreover, as appellate defense counsel notes, these "bullpen" examinations, smacking of some intolerant police court, lead to inadequate inquiry into the pleas, reception of *pro forma* answers to ritualistic questions, and no real determination of the voluntariness and providence of the plea.

That is precisely the situation which this record presents. The accused was arraigned with four other men. He was examined in rotation with them and their answers appear only in brief affirmatives and negatives. There is no meaningful inquiry into his pleas on the record, and we are faced with nothing here but a speeded up, assembly line technique of going through what the law officer apparently considered mere formalities in order to get the cases over with quickly. Such is hardly judicial, and we should not only express our stringent disapproval but likewise stamp it as prejudicial *per se* in order to eliminate the practice wholly. I would so hold.

I likewise would find prejudice in the provision in the pretrial agreement regarding waiver of speedy trial and due process. In United States v Cummings, supra, we condemned such provisions as "contrary to public policy and void." *Id.*, at page 379. We found prejudice as "the waiver provision leaves us with a record into which there has been stipulated substantial periods of unexplained delay, presenting questions which might otherwise have been settled below." *Id.*, at page 379. There, we went on to state, at page 380:

"As we have said, the stipulated chronology affirmatively reflects inordinate and unexplained delays at each stage of the proceedings prior to trial. Even after the accused had served the sentence imposed as a result of his prior conviction, the eight-day limitation on forwarding charges, imposed by Code, supra, Article 33, was ignored; it took one week to assign counsel for the pretrial investigation; and after that investigation was deferred for over a month after charges were preferred, it also was finally waived by the accused, with charges being forwarded thirty-six days after the statutory limit. No explanation was given, and trial thereafter was delayed for an additional thirty-five days, even though it had long been known accused intended to plead guilty and the offenses alleged, on their face, involved no difficulties in proof."

In the instant case, the chronology as set out by the majority likewise indicates substantial periods of unexplained delay. Thus, though accused was apprehended on March 23, 1967, and returned to Camp Pendleton in confinement on March 24, 1967,

charges were not preferred and forwarded until May 8, 1967, thirty-seven days beyond the eight-day limit set by Code, supra, Article 33, 10 USC § 833. Counsel was not assigned to accused until eight days after he requested such to be made available. And though accused indicated his intention to plead guilty and waived pretrial investigation, he was not in fact tried until July 7, 1967, after he had been in pretrial confinement for one hundred and five days. Finally, it might be noted that Pratt, as was the case in *Cummings,* supra, was charged with offenses which involved no difficulty of proof.

The situation here, therefore, is, if anything, more aggravated than that in the *Cummings* case. Here, as there, there are substantial periods of unexplained delay on which accused was precluded a hearing by the void proviso in his pretrial agreement. True, explanations of the delay might be forthcoming but Pratt, as was Cummings, is entitled to the opportunity to demand them, unencumbered by an agreement not to raise the issue. I would so order, and dispose of this case in the same manner as we did in United States v Cummings, supra.

In sum, then, I cannot agree that no prejudice is inherent in a situation wherein an accused can be indefinitely kept in pretrial confinement; caused to waive the issues of speedy trial and due process as a part of his pretrial agreement; and, after waiving almost every right he possesses, may be placed on an assembly line of "justice" and processed as one of a group through a military justice mill. Police court methods have justly earned the condemnation of every right thinking member of the bar. The attempt to introduce them into our processes should be instantly cut off.

I would reverse the decision of the board of review and order a rehearing at which the accused, unencumbered by the pretrial agreement, could receive an individualized hearing on the providence of his guilty plea.