UNITED STATES, Appellee,

v.

Alvin F. JONES, Private U.S. Army, Appellant.

No. 53,403.

CM 446070.

U.S. Court of Military Appeals.

Feb. 17, 1987.

For Appellant: *Captain Stephen W. Bross* (argued); *Colonel Brooks B. La-Grua, Major Edwin D. Selby, Captain H. Alan Pell* (on brief); *Lieutenant Colonel Paul J. Luedtke.*

For Appellee: *Captain Carlton L. Jackson* (argued); *Colonel James Kucera, Lieutenant Colonel Larry D. Williams,* and *Lieutenant Colonel Gary F. Roberson* (on brief); *Colonel Norman G. Cooper, Lieutenant Colonel Adrian J. Gravelle, Captain Robert L. Swann.*

OPINION OF THE COURT

SULLIVAN, Judge:

Pursuant to his pleas, appellant stands convicted of kidnapping, rape, and robbery, in violation of Articles 134, 120, and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 934, 920, and 922, respectively. The military judge, sitting alone as a general court-martial, sentenced him to a dishonorable discharge, confinement for 35 years, and total forfeitures. In accord with a pretrial agreement, the convening authority approved the adjudged discharge and forfeitures but only 8 years of confinement. The Court of Military Review affirmed the approved findings and sentence. 20 M.J. 853 (1985).

The following provision appears in appellant's pretrial agreement:

I also agree and understand that in addition to my plea as specified below, my defense counsel will not make any mo-

tions contesting the legality of any search and seizure out of which evidence against me may have been directly or indirectly obtained, or motions challenging any legality of any out-of-court identifications.

We granted review to determine whether this provision violates the "public interest" to such an extent that inclusion of its terms in the agreement renders the entire instrument void. There are two essential questions to resolve. First, does *United States v. Holland*, 1 M.J. 58 (C.M.A. 1975), render invalid any pretrial agreement or render improvident any plea pursuant to an agreement which contains such a provision? We answer this question in the negative so long as this provision is shown to have voluntarily originated from appellant. Second, does this record establish that the agreement was a freely conceived defense product? To this we respond in the affirmative. At this point, attention is best focused upon certain events which transpired at trial.

Understandably, the military judge properly inquired of both counsel whether they believed such a provision was lawful. The relevant portion of the colloquy appears in the record as follows:

MJ: Now I note that in the paragraph marked number 2, that it's agreed that the defense counsel will not make any motions contesting the legality of any search and seizure or any motions challenging any out-of-court identifications. With regard to that matter, for the record, did the defense perceive that there was an issue as to the legality of the search or seizure?

DC: Yes, Your Honor. There was an issue as to that.

MJ: Okay; and did you perceive that there was an issue as to the legality of out-of-court identification?

DC: Yes, Your Honor.

MJ: Counsel can perhaps refresh my memory. What's the latest position of the court with regard to requiring the waiver of motions as part of a pretrial agreement?

TC: Your Honor, the current position is that an accused cannot be required as a part of a pretrial agreement by the convening authority to waive the type motions that the accused in this case has waived. However, if the request initiates with the accused, if the accused states "in exchange for this I will not make any motions," then that is appropriate. The accused can make that waiver of his own motion without being required to do that by the convening authority as a precondition to accepting a pretrial agreement.

MJ: Okay; and is that the defense's understanding?

DC: Yes, Your Honor.

MJ: I believe that is correct. I can't cite you the case that says that, but I believe that's correct, so with that in mind, did this idea of waiving these motions originate with the defense?

DC: Yes, Your Honor; it did.

MJ: So you made this proposal then initially in order to induce the convening authority to accept the pretrial agreement?

DC: That is correct, Your Honor.

MJ: Now Private Jones, do you understand then that in your pretrial agreement you also agreed that your defense counsel would not make any motion in regard to a search and seizure? Do you understand that?

ACC: Yes, I do, sir.

MJ: And also that he would not make any motion with regard to the legality of any out-of-court identification of you. Do you understand that?

ACC: Yes, sir.

\* \* \* \* \* \*

MJ: So are you agreed that your defense counsel should not make those motions?

ACC: Yes, sir.

\* \* \* \* \* \*

MJ: Has anyone tried to force you to enter into this pretrial agreement?

ACC: No, sir.

MJ: Are you pleading guilty only because you hope to receive a lighter sentence by virtue of the pretrial agreement, or are you pleading guilty because you are convinced that you are in fact guilty?

ACC: I'm pleading guilty because I are [sic] in fact guilty.

Two important factors for consideration evolve from this exchange. First, defense counsel did express his view that search-and-seizure and victim-identification were issues in the case, albeit waivable at his election. Secondly, both parties acknowledged the waiver provision originated with appellant to induce the convening authority to accept the overall proposal.

The suggestion is made that counsel's willingness to abdicate what he may perceive as viable search and identification issues highlights the need for a paternalistic appellate-court attitude. Advocates of that approach say that it is better to litigate concerns of counsel and at least in appearance purify the record, rather than concede into the shadows of a pretrial agreement. Of course the inference is that the concern is valid and perhaps significant enough to affect disposition. In principle we acknowledge that, indeed, there may be cases where the record would support such an inference and the consequences thereof.[1] Yet, this case does not appear to be one of them. Rather, without more, counsel's acknowledgments appear merely as "puffing" support for his election and tactic to persuade his case into a prearranged deal.[2] That leads us directly into the second factor. Both counsel and appellant admitted the questioned provision was purposefully included to spruce up the package and thereby induce the convening authority to accept it.

What we are left with, then, is a defense judgment that its proposal was in the best interests of the accused[3] and a well-orchestrated effort to achieve a successful outcome. Neither the judgment nor the elected tactical approach violates any public norm. An accused is allowed to attempt orchestration of that stage in the process. Only actions which may reasonably be construed as attempts to orchestrate the trial proceeding itself will be rebuffed. *See United States v. Holland, supra.*[4] This would be the situation where the evidence of record establishes that a government counsel, staff judge advocate, convening authority, or anyone participating in the prosecutorial function requires or strongly "urges" inclusion of such a waiver provision. There the attempt at gaining unfair leverage is obvious and publicly unacceptable. We will also intercede against attempts to inhibit the exercise of appellate rights. *See United States v. Mills,* 12 M.J. 1 (C.M.A. 1981).

---

1. We say this with full appreciation of the fact that ordinarily a guilty plea itself waives any right to challenge identifications or illegal searches and seizures. *See* Mil. R. Evid. 311(i) and 321(g), Manual for Courts-Martial, United States, 1969 (Revised edition). The obvious implication, therefore, is that a pre-guilty-plea waiver, which causes the same result, is equally acceptable. While the implication may be viable in most cases, it may not be necessarily dispositive in all cases.

2. It is easy to perceive how one enhances his bargaining position by suggesting without explaining the possibility of stumbling blocks which can easily be removed "if the price is right."

3. The Court of Military Review wisely observed that this "appellant was no stranger to the criminal legal process" and that he faced "a grim future." 20 M. J. at 855. We have no doubt he placed his "hat in his hand" when he tendered his offer.

4. There, Judge Cook authored the Opinion of the Court (with Senior Judge Ferguson concurring) that plea-bargain agreements which provide that the plea must be entered by the accused prior to the presentation of any evidence on the merits and/or presentation of motions going to matters other than jurisdiction place impermissible constraints on military judges and will be considered null and void. The underlying motivation was to stop the Government from overreaching and orchestrating trial proceedings into "an empty ritual." *See* 1 M.J. at 60; *see also United States v. Elmore,* 1 M.J. 262 (C.M.A. 1976); *United States v. Cummings,* 17 U.S.C.M.A. 376, 38 C.M.R. 174 (1968); and *United States v. Allen,* 8 U.S.C.M.A. 504, 25 C.M.R. 8 (1957).

True, there is a statement in *Holland* which suggests that initiation by the accused may not save the day:

> On many occasions, petitions have been reviewed by this Court in which a guilty plea was entered pursuant to a pretrial agreement. Our approval of these arrangements in subsequent opinions, however, was not intended either to condone or to permit the inclusion of indiscriminate conditions in such agreements, even when initiated or concurred in by the accused.

1 M.J. at 59.

Yet, many institutional safeguards have been mandated since that holding. In *United States v. Green,* 1 M.J. 453 (C.M.A. 1976), we announced a procedural rule that the military judge must assure on the record that the accused understands the meaning and effect of each provision in the pretrial agreement; as well as make sure that the written agreement encompasses all the understandings of the parties and that they agree with his interpretation of the plea bargain. In *United States v. King,* 3 M.J. 458 (C.M.A. 1977), we further mandated specific inquiries seeking comportment of counsel. The notion was advanced that substantial compliance with *Green* was not sufficient to ensure against unwanted and undetected *sub rosa* agreements, further needless time-consuming appellate litigation, and involuntary guilty pleas. Rather, strict compliance was needed to ensure complete public confidence in the plea-bargain process.

With those procedures in place and operational, we can relax our approach to other terms which appear "straightforward and simple" and which are "susceptible only to one interpretation." *See United States v. Passini,* 10 M.J. 108 (C.M.A. 1980) (footnote omitted); *see also United States v. Schaffer,* 12 M.J. 425 (C.M.A. 1982). Let there be no mistake, however: we will continue to strike hard where the circumstances describe a command-sponsored clause which would violate the institutional safeguards an accused has under the Uniform Code of Military Justice. There is no evidence before us here to indicate that type of command pressure. Rather, appellant conceded at trial his best interest, and presumably that of society as well, was served by the convening authority's accepting his proposal. On appeal he attempts to shift gears and argue that an important societal interest was placed in jeopardy. It is not easy to envision how the public conscience has been violated; but even if we concede the notion, appellant is the one who caused, and so should live with, that result.[5]

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

COX, Judge (concurring in the result):

I write to distance myself from any implication in the majority opinion that the point of origin or "sponsorship" of any particular term of a pretrial agreement is outcome determinative. In the first place, I anticipate that determining the point of origin will be problematic. For example if, over a period of months or years, the local defense bar comes to realize that the only pretrial agreements ever approved by a particular convening authority contain a certain waiver or waivers, who has sponsored the term? I would assume that the convening authority did, regardless of who literally may have caused the language to be inscribed on a particular document and transmitted to the opposing party.

Moreover, with a few notable exceptions (including, but not necessarily limited to, the rights to counsel, allocution, appeal, and the right to contest jurisdiction), I see no problem with the Government's sponsoring, originating, dictating, demanding, etc., specific terms of pretrial agreements. *Cf. Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). I take it

---

5. Furthermore, appellant's alternative reference to R.C.M. 705(c)(1)(B) has been considered and is deemed unpersuasive since this case was tried before the effective date of Manual for Courts-Martial, United States, 1984.

that the convening authority's ability to refuse entirely to enter into pretrial agreements or to enter into any particular agreement is the ultimate command-sponsored limitation. Yet, I am aware of no authority for the proposition that a convening authority has a duty to enter into pretrial agreements. Therefore, any less restrictive policy the convening authority might adopt regarding the terms he might accept or require, short of such terms as might offend public policy or higher authority, should be nonobjectionable.

I make these observations on the assumption that the accused will, in all cases, enjoy, as an alternative to the Government's terms, unrestricted access to the ultimate remedy—that is, the trial—together with the total panoply of rights and opportunities that entails. Of course, on the instant facts, it is unnecessary to reach these conclusions, and I would not have, save for what I perceive to be the unacceptable and equally unnecessary implications flowing from the majority opinion.

Accordingly, I concur in the result.