**UNITED STATES, Appellee,**

v.

**Corporal Donald L. GIBSON, 407–98–7248, United States Army, Appellant.**

**ACMR 8800401.**

U.S. Army Court of Military Review.

30 Nov. 1988.

For Appellant: Lieutenant Colonel Joel D. Miller, JAGC, Major Marion E. Winter, JAGC, Captain William J. Kilgallin, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Major Daniel J. Dell'Orto, JAGC, Captain Martin D. Carpenter, JAGC, Captain Jody M. Prescott, JAGC (on brief).

Before HOLDAWAY, THORNOCK and CARMICHAEL, Appellate Military Judges.

OPINION OF THE COURT

THORNOCK, Senior Judge:

The appellant was tried by a military judge sitting as a general court-martial convened by the commander of the 25th

Infantry Division (Light) in Hawaii. Pursuant to a pretrial agreement allowing for mixed pleas, he pleaded guilty to forcible sodomy upon his five-year-old son in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925 (1982) [hereinafter UCMJ], and not guilty to committing indecent acts upon his three-year-old daughter in violation of Article 134, UCMJ, 10 U.S.C. § 934 (1982).

He was convicted of the sodomy offense on his guilty plea. The government presented evidence on the indecent acts offense and he was found guilty of that offense as well. He was sentenced by the military judge to a dishonorable discharge, confinement for twenty years, forfeiture of $320.00 pay per month for twenty years, and reduction to Private E–1. In accordance with a pretrial agreement, the convening authority approved the sentence, but suspended the confinement in excess of five years for a period of two years from the date of the appellant's release from confinement with a provision for automatic remission.

The facts of this case are not in dispute. The appellant assigns as error that the pretrial agreement was contrary to both public policy and statute and is therefore void, rendering the findings and sentence invalid. We disagree and affirm.

The operative assertions by the appellant center on a somewhat unusual pretrial agreement. The agreement had two distinctive features. First, it provided for mixed-pleas without the requirement of a stipulation of fact and allowed the government to present evidence on the not guilty plea. Secondly, it provided that the appellant would "waive any and all evidentiary objections based on the Military Rules of Evidence to any pretrial statements made by my children, [D] and [D]." (Appellate Exhibit II.) The record does not reveal the negotiations of the parties concerning the mixed-plea portion of the agreement, except as to the clear assertion that the agreement originated with defense. Mixed-plea and waiver pretrial agreements are not the norm, but obviously they can serve useful purposes in judicial economy,

as well as protecting provident guilty pleas and strengthening accused's negotiation positions.

In the case *sub judice*, it is clear that there was a mutual benefit derived by the defense-initiated provision of waiver. It removed impediments to the government's presentation of credible evidence by children of tender years who had been victimized by their father. It eased further emotional travail to the victims and their family, including no doubt their father, and it provided the appellant a sentence limitation that was far less than the maximum. The wisdom of both sides of the bargain was amply shown at trial by the testimony of the victims and the conduct of counsel, as well as by the convening authority's reduction of the appellant's sentence by fifteen years after the trial. Under the circumstances of this case, public policy most certainly was vindicated rather than violated. *See United States v. Jones*, 23 M.J. 305 (C.M.A.1987) (military judge should establish on the record that provision in a pretrial agreement in which accused waives certain rights voluntarily originated with accused).

 Both *Jones* and *United States v. Holland*, 1 M.J. 58 (C.M.A.1975), loudly sound caution to all parts of the military justice system that pretrial agreements which forego or waive procedures or matters that benefit an accused will be scrutinized for propriety. Further, it is mandated military law that the pretrial agreement must be a "freely conceived defense product," *Jones*, 23 M.J. at 306, and "attempts to orchestrate the trial proceeding itself will be rebuffed." *Id.* at 307 (citing *Holland*). *See also United States v. Zelenski*, 24 M.J. 1 (C.M.A.1987) (Guilty plea not invalidated where pretrial agreement with provision waiving trial by court-martial composed of members where provision was freely conceived defense product.); *United States v. Green*, 1 M.J. 453 (C.M.A.1976) (Military judge must ascertain, *inter alia*, that an accused understands the meaning and effect of each condition of a pretrial agreement.); and *United States v. Allen*, 25 C.M.R. 8 (C.M.A.1957) (The pretrial

agreement cannot transform the trial into an empty ritual.). In the instant case, all required conditions were satisfied. The military judge made a careful initial providence inquiry, noted the waiver provision and ruled that it was providently made.[1] In part, the inquiry included the following:

MJ: Okay. Now this agreement says that in addition to your plea of guilty, the pleas that you have already entered, you will waive any evidentiary objections to the admission into evidence of pretrial statements made by either [D], or [D], your children. Now first of all, do you understand what I just said?

ACC: Yes, sir.

MJ: You see, we have rules about what can be considered in a trial by court-martial; these are rules of evidence, and those rules say that some things can't be considered. And it may be that those rules will say that some of the things or all of the things that your children might say or might have said to other people would not be admissible, could not be considered as evidence against you in your trial. Do you understand that?

ACC: Yes, sir.

MJ: What this says is that you're going to give up any argument or contention that that is so, and you're going to basically allow the government to introduce any statements made by your children, either in court or previously. Do you understand that?

ACC: Yes, sir.

MJ: Now, you would be giving up the right to make those objections; you'd probably be giving up the right to confront the witnesses against you. And this would not only pertain to the offense to which you've plead guilty, but to the other offenses with which you're charged ... Do you understand that?

ACC: Yes, sir.

MJ: Now, do you understand that you would be giving up the right to keep out any statements either of those children have made about any offenses of this nature, whether such statements were made in court or out of court; at the time of your trial or previously?

ACC: Yes, sir.

MJ: Is that clear to you?

ACC: Yes, sir.

MJ: All right. Now that's what this waiver means. All of that comes in, and may not only be considered with respect to the offense to which you've pled guilty today, but may also be considered as evidence against you concerning these other offenses with which you're charged. Do you understand all that?

ACC: Yes, sir.

MJ: Is that what you meant to have happen as part of this agreement?

ACC: Yes, sir.

The judge also made certain that the pretrial agreement was "a freely conceived defense product" and no impermissible attempts to "orchestrate" the trial occurred as follows:

MJ: All right. Now how did this come about; who started all of this?

ACC: My defense counsel brought it up, sir, in talking to me. I thought about it and everything and I told him that's what I wanted, sir.

MJ: Okay. Now, usually in a situation like this where the defense offers something like this, it's because you think that in the long run you'll be better off by giving up one thing in order to get something else; that it'll be to your benefit. Is that the way you look at this?

ACC: Yes, sir ...

MJ: All right. Can you confirm all of that, Major [F]?

DC: Yes, sir, this was a product of my mind. I proposed it first to my client before I ever went to the government with it. The government never approached me about this. We never discussed it until after I initially had brought the subject to the government.

MJ: I gather you're convinced that your client will be better off if he gives up his

---

1. The judge's inquiry concerning the waiver provision alone takes nearly five pages of the record.

right to contest this evidence in exchange for the sentence limitation?

DC: Yes, sir, I am.

MJ: Do you understand that this may bring about a conviction for very serious offenses that might not otherwise be reached?

DC: Yes, sir, I am, and I've discussed that with my client.

MJ: Okay. Your professional judgement is that this is the best course of action for your client, all things considered, then?

DC: Yes, sir; we thought about it for a long time and we discussed it on quite a few occasions.

MJ: Okay, all right. And you're also willing to assure me that the government had no hand in the genesis of this agreement?

TC: Yes, sir, that's true.

During the course of the contested portion of the trial, the military judge and counsel had occasion to readdress the waiver provision when an evidentiary objection was made by the defense concerning uncharged misconduct. The military judge again pursued the intent of the waiver and the origin of the provision.

On the record, the military judge also clearly limited the effect of the waiver provisions to confrontation and hearsay objections to statements of the appellant's children. Further, he satisfied himself that the defense was not "muzzled" and was free to make any other objections. Both the defense and government acceded to that understanding. Under the circumstances of this case, it is clear that the defense made tactical pretrial decisions for the accused's benefit. There was no impermissible attempt to "orchestrate the trial proceedings," and the pretrial agreement waiver provision meets all legal requirements. Thus, the assignment of error is without merit.

On consideration of the entire record, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are affirmed.

Chief Judge HOLDAWAY and Judge CARMICHAEL concur.