**UNITED STATES, Appellee,**

v.

**Charles J. GANSEMER, Lance Corporal
U.S. Marine Corps, Appellant.**

No. 68,053.
CMR No. 91 3218.

U.S. Court of Military Appeals.

Argued April 6, 1993.

Decided Sept. 29, 1993.

For Appellant: *Lieutenant Margie Sampson*, JAGC, USNR (argued); *Captain Dwight H. Sullivan*, USMC (on brief); *Lieutenant Randall L. Chambers*, JAGC, USNR.

For Appellee: *Captain Brett D. Barkey*, USMCR (argued); *Colonel T.G. Hess*, USMC, *Lieutenant Commander S.A. Stallings*, JAGC, USN, *Captain A. Diaz*, USMC (on brief).

*Opinion of the Court*

COX, Judge:

Pursuant to his pleas, appellant was convicted by special court-martial of wrongful use and possession of marijuana on different days, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement for 30 days, forfeiture of $500 pay, and reduction to the lowest enlisted grade. In accordance with a pretrial agreement, the convening authority reduced confinement to 15 days, but otherwise approved the sentence. The Court of Military Review affirmed the findings and sentence without opinion on February 19, 1992.

In the pretrial agreement, appellant bargained for a confinement cap of 15 days. As an inducement to the convening authority, he waived his right to a hearing before an administrative discharge board, in the event he was processed for administrative separation after trial. Appellant petitioned this Court for review, and we specified the following issue:

WHETHER WAIVER OF AN ADMINISTRATIVE DISCHARGE BOARD IS A PROPER CONDITION OF A PRETRIAL AGREEMENT.

Paragraph 14 of appellant's pretrial agreement, which is at issue, states:

14. That my counsel advised me that I might be processed for an administrative discharge, even if part or all of the sentence, including a punitive discharge, is suspended or disapproved pursuant to this agreement; that should I be processed for an administrative discharge under other than honorable conditions, I will waive my right to a hearing before an administrative discharge board, doing so with the full understanding of the consequences of waiving such a board, as explained to me by my defense counsel.

Appellant stated he had "discuss[ed] the consequences of waiving" his right to a hearing before an administrative discharge board with trial defense counsel, and he was satisfied that the provision was in his "best interest." The military judge found "the pretrial agreement to be in accord with appellate case law, [and] not contrary

to public policy or [his] own notions of fundamental fairness."

With apologies to Bench and Bar, this opinion begins with some very elementary comments concerning military law. When an enlisted member is separated from the military (other than by retirement), he must be paid "his final pay," and "his discharge certificate or certificate of release from active duty" must be delivered to him. 10 USC § 1168(a); *United States v. Howard*, 20 MJ 353 (CMA 1985). On that certificate, currently a DD Form 214, one finds, among other important information, the characterization of the discharge from service. For enlisted Marines, that discharge may be characterized as either honorable; general; under other than honorable conditions; bad-conduct; or dishonorable. Para. 1003, Marine Corps Order (MARCORSEPMAN) P 1900.16D (27 Jun 89); RCM 1003(b)(10)(B) and (C), Manual for Courts–Martial, United States, 1984. *See* Arts. 18 and 19, UCMJ, 10 USC §§ 818 and 819, respectively. *See generally* Part 2C.1 (Enclosure 3), Department of Defense Directive 1332.14 Enlisted Administrative Separations (28 Jan.1982). Each one of the forms of discharge results in exceedingly different consequences to the servicemember. If an honorable discharge is awarded, good things happen; if a dishonorable or bad-conduct discharge is imposed, bad things happen. *See United States v. Ohrt*, 28 MJ 301 (CMA 1989).

The latter two categories of discharge may only be issued as a result of the sentence of a court-martial. RCM 1003(b)(10)(B) and (C). The first three categories may be issued administratively by an appropriate authority. Para. 1003, MARCORSEPMAN, *supra; see* 10 USC § 1169.

If a military member engages in conduct which gives rise to probable cause to believe that he or she has committed an offense under the Uniform Code of Military Justice, 10 USC §§ 880–934, then an appro-priate authority must decide how to deal with the servicemember thus accused of the misconduct. Again to simplify, the appropriate authority has essentially four choices regarding that member. First, the authority may elect to do nothing. Second, the authority may elect to handle the matter "nonjudicially" pursuant to Article 15, UCMJ, 10 USC § 815. Third, the authority might elect to discharge that accused administratively. Last, that authority might elect to try that accused by court-martial.

Naturally, if nothing is done, that ends the matter. If, on the other hand, the authority elects any of the other three methods of disposing of the allegations, a servicemember is granted certain statutory and constitutional rights. In the case of nonjudicial punishment, the rights are spelled out in Article 15 of the Code and in attendant service regulations. With regard to administrative-discharge procedures, a servicemember is afforded many due process protections, mostly spelled out in service regulations but having their foundation in the Constitutional principle that no person may be deprived of property without due process of law. U.S. Const. amend. V; *see generally Wilson v. Secretary of the Navy*, 417 F.2d 297 (3d Cir. 1969), *cert. denied*, 397 U.S. 1068, 90 S.Ct. 1507, 25 L.Ed.2d 689 (1970); *Reed v. Franke*, 297 F.2d 17 (4th Cir.1961).

If the authority elects to proceed against an accused in a trial by court-martial, once again that member enjoys substantial rights provided in the Uniform Code of Military Justice, most of which are founded again in the Constitutional principle that no person may be deprived of life or liberty without due process of law. U.S. Const. amend. V.

Interestingly, a servicemember has absolutely no say regarding the choice of action an authority makes regarding disposition of the allegations.[1]

Assume, arguendo, that the authority elects to dispose of the allegations adminis-

---

1. Except that, under most circumstances, a servicemember may "demand[ ] trial by court-martial in lieu of" nonjudicial punishment. Art. 15(a), Uniform Code of Military Justice, 10 USC § 815(a).

tratively. Then, and depending on the type of administrative action being considered, for the first time the opportunity shifts to the servicemember to elect what he or she will do regarding the allegations. First, the member can contest the allegations in a hearing. Second, the member can accept the consequences of the administrative action and waive the right to a hearing. Third, the servicemember can attempt to negotiate a resolution of the matter with the authority.

Likewise, if the authority elects to try the servicemember by court-martial, then the election of remedies shifts to the servicemember. First, he or she may elect to contest the charges with the full panoply of protections afforded by the Uniform Code and the Constitution. Second, the servicemember may elect to plead guilty and accept the consequences. Third, as we more frequently see, the servicemember may attempt to negotiate a particular result with the authority by agreeing to plead guilty to some or all of the charges in exchange for sentence limitations.

The latter is exactly what appellant did in this case. The minority judges find this provision illegal (38 MJ at 344) in that it attempts to commingle administrative actions with court-martial actions. We strongly disagree for three reasons.

1. It has long been the law that an accused may ask for an administrative discharge in lieu of a court-martial as one of the ways that he can attempt to negotiate with the authority. Part I L (Enclosure 3), DOD Directive 1332.14 (28 Jan. 1982); para. 6419, MARCORSEPMAN, *supra.* If that is not already mingling administrative discharge with punitive action, what is it?

2. If we take away an important bargaining chip of an accused, *i.e.*, that he or she is willing to accept either a punitive or an administrative discharge in lieu of a harsher sentence, what have we accomplished other than denying an accused the right to bargain for his or her freedom?

**2.** I recognize that we have not permitted an accused to waive prematurely other valuable rights such as the right to appeal. *United States*

*See United States v. Jones,* 23 MJ 305, 309 (CMA 1987) (Cox, J., concurring in the result) ("[A]ny less restrictive policy the convening authority might adopt regarding the terms he might accept or require, short of such terms as might offend public policy or higher authority, should be nonobjectionable."). The servicemember is not giving up any rights which he may not relinquish anyway.[2] *See* paras. 1004.4c & g and 6303.3a(8) & (9), MARCORSEPMAN, *supra.*

3. The decision on whether to bargain with the appropriate authority is not done in the blind. Every accused in our system is afforded competent legal counsel to guide him or her through the maze of procedures to ensure no overreaching by the military service.

His offer to waive his right to a hearing before an administrative discharge board as an inducement to the convening authority was made after being advised by counsel. He freely bargained, and there has been no showing of overreaching. *See United States v. Schaffer,* 12 MJ 425, 428 (CMA 1982) ("[O]verreaching" by the prosecution is one of the dangers of pretrial bargaining because of the inferior bargaining position of the accused.); *United States v. Cabral,* 20 MJ 269, 274 (CMA 1985) (Pretrial agreements "should not be interpreted in such a way that the Government will appear to have overreached."). Accordingly, we hold that paragraph 14 of appellant's pretrial agreement is valid.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges CRAWFORD and GIERKE concur.

WISS, Judge, joined by SULLIVAN, Chief Judge (concurring in the result):

On appellant's petition for review, this Court specified the following issue:

*v. Hernandez,* 33 MJ 145 (CMA 1991). But there are valid reasons for these restrictions which seem inappropriate here.

WHETHER WAIVER OF AN ADMINISTRATIVE DISCHARGE BOARD IS A PROPER CONDITION OF A PRETRIAL AGREEMENT.

Now, on fuller consideration, I would hold that it is not and that, accordingly, that element of the pretrial agreement in this case must be stricken. However, in light of appellant's candid admission that his decision to plead guilty was unaffected by this provision, Final Brief at 5, the decision below may be affirmed, so I concur in the result reached by the majority.

The lead opinion of Judge Fletcher in *United States v. Dawson*, 10 MJ 142, 149 (CMA 1981), reflects several principles that, during the first three decades of this Court's precedent, marked the Court's view of the appropriate role and scope of pretrial agreements:

> This Court has taken the longstanding position of refusing to encourage expansive pretrial agreement provision-making by military authorities. *See United States v. Partin*, 7 MJ 409, 411 n.3 (CMA 1979); *United States v. Holland*, 1 MJ 58 (CMA 1975). This is because of the sensitive position of plea negotiations in our criminal justice system. *See* Note, *The Unconstitutionality of Plea Bargaining*, 83 Harv.L.Rev. 1387 (1970). Military authorities have long been on notice that this Court will carefully scrutinize plea bargain agreements and their operation. *See United States v. Welker*, 8 USCMA 647, 25 CMR 151 (1958); *United States v. Allen*, 8 USCMA 504, 25 CMR 8 (1957). In fact, this Court has said that the pretrial agreement should be limited to bargaining for charges, sentence and pleas. *See United States v. Cummings*, 17 USCMA 376, 38 CMR 174 (1968); *see also United States v. Brady*, 17 USCMA 614, 38 CMR 412 (1968); *United States v. Pratt*, 17 USCMA 464, 467, 38 CMR 262, 265 (1968); Fed. R.Crim.P. 11(c)(1).

In the decade since *Dawson*—and certainly since the cases cited therein as precedent, like *Holland*—this Court has expanded somewhat the permissible scope of pretrial agreements beyond "charges, sentence and pleas." The Court has done so, at least, when it is clear that the *accused* originated the provision then under question.[1]

For instance, in *United States v. Jones*, 23 MJ 305 (CMA 1987), the accused had initiated a pretrial agreement, one provision of which waived any pretrial "motions contesting the legality of any search and seizure" or validity of "out-of-court identifications." *Id.* at 306. In upholding the provision, the Court noted that the accused had freely initiated the agreement containing the provision and that no official in the prosecutorial arena (including the staff judge advocate or convening authority) ever had used its substantial leverage to urge inclusion of such a provision. Instead, the Court observed:

> What we are left with, then, is a defense judgment that its proposal was in the best interests of the accused and a well-orchestrated effort to achieve a successful outcome. Neither the judgment nor the elected tactical approach violates any public norm....

23 MJ at 307 (footnote omitted).

Similarly, in *United States v. Gibson*, 29 MJ 379(CMA), *cert. denied*, 496 U.S. 907, 110 S.Ct. 2591, 110 L.Ed.2d 272 (1990), the challenged provision promised that the accused would "waive any and all evidentiary objections based on the Military Rules of Evidence to any pretrial statements made by my children, [his son and daughter]." *Id.* at 380. Citing *Jones*, the Court held that the provision "was neither invalid nor substantially prejudicial to appellant's rights." *Id.* at 380. The wrinkle in *Gibson* was that the accused pleaded guilty to some charges but not guilty to others—and the pretrial agreement provision waived his right to object to particular evidence even

---

1. *But cf.* RCM 705(d)(1), Manual for Courts-Martial, United States, 1984 (Change 5), effective for charges preferred beginning on July 6, 1991; *United States v. Burnell, pet. granted*, 38 MJ 457 (1993), concerning the validity of this change.

on the contested charges. Writing for himself and Judge Cox, then-Judge Sullivan stated:

Despite this distinction, review of the decision in *Jones* still suggests the standard by which the lawfulness of this provision can be measured. There, a majority of the Court held that an otherwise valid guilty plea will rarely, if ever, be invalidated on the basis of plea-agreement provisions proposed by the defense. *United States v. DeYoung*, 29 MJ 78, 81 (CMA 1989); *United States v. Zelenski*, 24 MJ 1 (CMA 1987). The rationale for this holding is that, absent government overreaching, it may be presumed that an accused and his counsel know what is fair to him and in "his best interest." *United States v. Jones, supra* at 308.

29 MJ at 382.

This approach to pretrial agreements—as well as the general proscription, however, that, in any event, "the agreement cannot transform the trial into an empty ritual," *United States v. Allen*, 8 USCMA 504, 507, 25 CMR 8, 11 (1957)—is reflected in RCM 705(c), Manual for Courts–Martial, United States, 1984.

RCM 705(c)(1), for instance, notes that a provision in a pretrial agreement will *not* be valid "if the accused did not freely and voluntarily agree to it" or

if it deprives the accused of: the right to counsel; the right to due process; the right to challenge the jurisdiction of the court-martial; the right to a speedy trial; the right to complete sentencing proceedings; the complete and effective exercise of posttrial and appellate rights.

By contrast, RCM 705(c)(2) sets out several provisions that are permissible, if they are proposed by the accused. They include:

(A) A promise to enter into a stipulation of fact concerning offenses to which a plea of guilty or as to which a confessional stipulation will be entered;

(B) A promise to testify as a witness in the trial of another person;

\*　　\*　　\*

(C) A promise to provide restitution;

(D) A promise to conform the accused's conduct to certain conditions of probation before action by the convening authority as well as during any period of suspension of the sentence, ...; and

(E) A promise to waive procedural requirements such as the Article 32 investigation, the right to trial by court-martial composed of members or the right to request trial by military judge alone, or the opportunity to obtain the personal appearance of witnesses at sentencing proceedings.

The Drafters' Analysis explains the rationale:

Since the accused may waive many matters other than jurisdiction, in some cases by failure to object or raise a matter (*see* RCM 905(e); Mil.R.Evid. 103(a)), or by a plea of guilty (*see* RCM 910(j) and Analysis), there is no reason why the accused should not be able to seek a more favorable agreement by agreeing to waive such matters as part of a pretrial agreement.

*Manual, supra* at A21–35 (Change 4).

This brief survey of decisions of this Court and RCM 705(c) reveals that the pretrial-agreement provisions that are permitted all have one thing in common (other than that they originated with the accused so that there was no government overreaching): They all involve some aspect of the military justice system and criminal proceedings. *None* involves the accused giving up an important benefit or waiving an important right in an arena that is distinct from criminal proceedings.

The case at bar does. The case at bar seeks to tie an umbilical cord between the criminal proceedings that emanated from the accused's misconduct and administrative proceedings that may emanate from that misconduct. Specifically, it seeks to use these criminal proceedings as a vehicle for the accused's waiving his right to due process at a possible future administrative proceeding. That is not an appropriate purpose of pretrial agreements.

A pretrial agreement is a creature of a criminal justice system. Most typically, it is a vehicle by which an accused agrees to make the prosecution's case against him easier in some substantial respect in return for some hedge in how severely he will be punished if convicted.[2] While a few provisions might not as *directly* reflect this relationship between what an accused will do for the prosecution and what the prosecution will do for the accused (*see, e.g.,* RCM 705(c)(2)(C), "A promise to provide restitution,"), they do at a minimum relate to the justice system in some tangible fashion.

The provision in the agreement in this case has no more to do with this fundamental relationship between a criminal defendant and a criminal justice system than would, for example, a provision that, if convicted, the accused will forgo his next promotion; or, if convicted, the accused will accept immediate reassignment to a combat zone. Indeed, the Government itself ironically observed in its brief that

"administrative separation, by definition, is not part of the court-martial process." Answer to Final Brief at 4 n.2. The public tolerates pretrial agreements because they tend to promote efficiency in the criminal justice system, notwithstanding that they might be criticized for the benefit they afford the criminal defendant. A provision that strays beyond this relationship does not serve this public interest—a conclusion that is unaffected by whether the accused wants the provision.

Appellant candidly admits that this provision was not material to his decision to plead guilty and that, therefore, his plea need not be invalidated. For its part, the Government has not sought invalidation of the agreement in the event that we strike this provision—likely because the only benefit that appellant received here was reduction of confinement by 15 days. Therefore, on the basis of the reasoning of this opinion, I would strike the provision as null and void *ab initio* but otherwise would affirm.

---

**2.** I believe there is a fundamental distinction between an accused's acquiescing in an administrative discharge *in avoidance of* a court-martial, on the one hand, and artificially entwining the separate and distinct proceedings, on the other. The first seeks to induce a favorable decision by the convening authority at the initial "how to deal with the servicemember" stage. The second, on the other hand, occurs after the decision to invoke the criminal justice system has been made and while the wheels of that system are turning. At that point, a guilty-plea agreement, which has viability only as a means of making that system more efficient, must appropriately be limited to that end.